# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679

---

| | |
|---|---|
| Appellate Court Caption | DOROTA LOJEK, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, and the DIRECTOR OF THE DEPARTMENT OF EMPLOYMENT SECURITY BOARD OF REVIEW, Defendants-Appellants (ABM Janitorial Services North Central, Inc. Defendant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0679 |
| Filed | January 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Board of Review's decision that plaintiff was ineligible for unemployment benefits because she voluntarily left her new work assignment without good cause attributable to her employer was not clearly erroneous, notwithstanding her contentions that the new assignment, which was made in response to a charge that she violated rules of employee conduct at her prior assignment, involved a new job with different hours, pay and regulations, and threatened her health, since plaintiff failed to present evidence supporting her claims, and there was evidence she accepted the demotion in order to keep her job. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-51207; the Hon. Robert Lopez-Cepero, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sharon A. Purcell, Assistant Attorney General, of counsel), for appellants. |
| --- | --- |
|  | No brief filed for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. Presiding Justice Lampkin and Justice Hall concurred in the judgment and opinion. |

**OPINION**

¶ 1      After plaintiff Dorota Lojek's employment with defendant ABM Janitorial Services (ABM) ended after 22 years on the job, she applied to the Illinois Department of Employment Security (IDES) for unemployment insurance benefits pursuant to the Illinois Unemployment Insurance Act (the Act) (820 ILCS 405/100 *et seq.* (West 2010)). The claims adjudicator determined that plaintiff was ineligible for benefits. Plaintiff appealed the adjudicator's decision to a hearing referee. The hearing referee held a telephone hearing, during which he heard the testimony of plaintiff's supervisor and the testimony of plaintiff, who required the assistance of an interpreter. The hearing referee determined that plaintiff voluntarily terminated her employment with ABM and was therefore ineligible for unemployment insurance benefits. 820 ILCS 405/601(A) (West 2010). The IDES Board of Review (the Board) affirmed the hearing referee's decision. Plaintiff filed a complaint for administrative review in the trial court, and the trial court reversed the decision of the Board. IDES appealed the trial court's order, and, for the following reasons, we reverse the order of the trial court and reinstate the Board's decision.

¶ 2                            BACKGROUND

¶ 3      The following facts are undisputed. In 2011, plaintiff was employed with ABM, a company that provides janitorial services. Roosevelt University is one of ABM's clients, and ABM assigned plaintiff to serve in a supervisory role at Roosevelt. On May 2, 2011, Mariola Scarlech, plaintiff's supervisor, discharged plaintiff from her supervisory position at Roosevelt. Scarlech informed plaintiff that ABM was terminating plaintiff from her position at Roosevelt because a Roosevelt employee had complained to ABM that plaintiff and two other employees were observed smoking cigarettes and drinking alcohol in the dean's office on April 27, 2011. ABM transferred plaintiff to a different work site[1] unaffiliated with

---

[1]Although the record on appeal discloses that the new site was located on the 1500 block of West Blackhawk Street, Chicago, neither the record nor IDES' brief discloses the type of workplace at the new site.

Roosevelt University. Plaintiff worked at the new site for one day, then never returned to work.

¶ 4 Plaintiff claimed that ABM did not prove that she was smoking a cigarette or drinking alcohol in the dean's office; however, in her testimony, plaintiff admitted to smoking in the dean's office. Plaintiff also claimed that she stopped working because she was transferred to a location that aggravated her existing health problems; however, plaintiff never provided any documentation of these problems.

¶ 5                           I. The IDES Claim

¶ 6 On May 15, 2011, plaintiff filed a claim with IDES seeking unemployment insurance benefits from defendant ABM. ABM contested plaintiff's eligibility for unemployment insurance benefits on the ground that it had discharged plaintiff for misconduct. In its response to plaintiff's claim, defendant ABM stated that plaintiff had been videotaped smoking and drinking in the office of the dean of Roosevelt University and that this conduct violated Roosevelt's and ABM's rules of employee conduct.

¶ 7 In response to ABM's challenge, the claims adjudicator conducted a telephone interview with plaintiff to determine whether she was eligible for unemployment insurance benefits. The claims adjudicator's summary of the telephone interview[2] included the following statements from plaintiff: plaintiff admitted that she smoked a cigarette "one time" in the dean's office, and that she knew that smoking in the building where she was working was against company policy. On the day that she smoked in the dean's office, plaintiff was not feeling well and was "feeling 'low.' " Although she normally went outside to smoke, her personal problems on that day led her to smoke in the dean's office. Plaintiff knew of ABM's and Roosevelt's "no smoking" policy, and she denied intentionally violating the policy. Plaintiff denied drinking alcohol in the dean's office and asserted that she had received no prior warnings or write-ups while working for ABM.

¶ 8 The claims adjudicator found that ABM fired plaintiff for misconduct connected with her work, resulting from the violation of a known and reasonable company rule. As a result, the claims adjudicator concluded that plaintiff was ineligible for unemployment insurance benefits.

¶ 9                     II. Appeal to the Hearing Referee

¶ 10 Plaintiff filed a notice of reconsideration and appeal to a hearing referee, arguing (1) that ABM had provided "no proof of [her] alleged misconduct," and (2) that ABM fired her because it wanted to cut down on its expenses by firing employees with high wages. The hearing referee granted plaintiff an appeal and issued a notice to the parties stating that they would have the opportunity to present evidence at a hearing conducted over the telephone. The hearing notice included a list of issues to be determined at the hearing, including: "Why was [plaintiff] separated from employment with [ABM]? If discharged, was it for misconduct

---

[2]No transcript of this telephone interview was included in the record on appeal.

in connection with the work? If [plaintiff] left voluntarily, was it for good cause attributable to the employer? See 820 ILCS 405/602A and 601A [(West 2010)]."

¶ 11     On July 14, 2011, the hearing referee conducted the telephone hearing. Plaintiff testified on her own behalf with the assistance of a Polish interpreter. Scarlech, plaintiff's supervisor at ABM, testified on behalf of ABM. Melissa Rogers served as ABM's "employer representative."

¶ 12                            A. The Supervisor's Testimony

¶ 13     Mariola Scarlech, plaintiff's supervisor, testified to the following. Scarlech was ABM's project manager for Roosevelt University, and plaintiff was the on-site "lead person"[3] at Roosevelt. On April 29, 2011, Scarlech received an email from a Roosevelt employee requesting that plaintiff be terminated from her position at Roosevelt because she had been observed smoking a cigarette and drinking alcohol in the dean's office on April 28, 2011. On May 1, Scarlech spoke to plaintiff via telephone, and plaintiff admitted that she smoked a cigarette and drank alcohol in the dean's office with two other ABM employees. Plaintiff told Scarlech that she was willing to be demoted in exchange for continuing employment with ABM. Scarlech contacted representatives of Roosevelt University and asked whether they would allow plaintiff to continue working there if she were demoted, and they refused. Scarlech then spoke to ABM's human resources department to inquire whether plaintiff could be transferred to a different location and work in a demoted position, and a new position at a new location was found for her.

¶ 14     Scarlech also testified that plaintiff knew of ABM's "no smoking" policy because ABM required its employees to attend monthly safety and policy meetings.

¶ 15                            B. Plaintiff's Testimony

¶ 16     Plaintiff Dorota Lojek testified as follows. After a Roosevelt employee complained about her, ABM transferred plaintiff to a different location, where she worked a different shift in a demoted position. Plaintiff worked at the new location for one day. The new location was "full of dust *** [and] sugar," and plaintiff asserted that she has "a problem with sugar." As a result of working at the new location[4] for eight hours, plaintiff became very red; and on the ride home, she began vomiting and experiencing nosebleeds. That night, she could not sleep.

¶ 17     Plaintiff did not return to work the next day. Instead, she contacted her union representative, who informed ABM that plaintiff would not return to work. Plaintiff has a cousin who works in a hospital, and she informed her cousin of her reaction to the new location. Plaintiff's cousin conveyed plaintiff's symptoms to a doctor at the hospital, and the

_____

[3]Scarlech described the "lead person" position as a supervisory role in which plaintiff directed other on-site ABM employees.

[4]As stated above, the record does not disclose the type of workplace at this new location. Therefore, we do not know why the new location was "full of *** sugar."

doctor gave plaintiff medication[5] and told her to drink a lot of milk. Plaintiff did not go to a hospital or personally consult a medical doctor.

¶ 18    Plaintiff stated in her defense that she had a good record at the company prior to the smoking incident and that she had been fired because ABM was trying to cut costs by firing employees who had been with the company for a long time and thus had higher wages than newer employees. Although her supervisor told her that she was videotaped smoking cigarettes in the dean's office, she did not believe the office had any cameras in it. Plaintiff asserted that the only evidence of wrongdoing was an open window and the smell of smoke in the office. Although she testified that her supervisor told her that she had been videotaped drinking alcohol, she also testified that no one had accused her of drinking alcohol. She testified that, when Scarlech asked her whether she had smoked a cigarette in the dean's office, she denied it. Despite being told a videotape existed, plaintiff testified that there were no witnesses who could verify that she had smoked a cigarette or consumed alcohol in the dean's office. However, she then admitted to the hearing referee that she had in fact smoked one cigarette in the dean's office. Plaintiff never denied or contested Scarlech's claim that plaintiff asked to be demoted in exchange for continuing employment with ABM.

¶ 19                           C. Melissa Rogers' Follow-up Questions

¶ 20    After the hearing referee concluded his questioning of both Scarlech and plaintiff, Melissa Rogers, ABM's representative, asked follow-up questions. Plaintiff again admitted that she smoked a cigarette in the dean's office at Roosevelt, and Scarlech again testified that she watched a videotape of plaintiff smoking in the dean's office. However, plaintiff then testified that Scarlech had observed only still pictures, not a videotape, and Scarlech modified her testimony to state that she had observed still photographs obtained from a videotape. However, Scarlech testified that these still photographs depicted plaintiff smoking a cigarette in the dean's office. ABM did not attempt to introduce either still photographs or a videotape into evidence during the telephone hearing. As a result, the photographs and videotape are not a part of the record for this appeal.

¶ 21                           D. Hearing Referee's Decision

¶ 22    On July 18, 2011, the hearing referee issued his decision, denying plaintiff unemployment insurance benefits. The hearing referee found that ABM discharged plaintiff from the Roosevelt location for valid misconduct connected with her work. He also found that plaintiff left her position at a new location after one day of work because of claimed health problems, plaintiff did not provide any medical documentation to verify the complained-of health problems. Plaintiff also did not request an accommodation from ABM. Instead, plaintiff "simply stopped reporting in." The hearing referee determined that plaintiff's reason for leaving work was "purely personal and not attributable to the employer." The referee concluded that plaintiff left work without good cause attributable to

_____

[5]The record does not disclose the specific medication provided.

ABM and was ineligible to receive benefits, pursuant to section 601(A) of the Act (820 ILCS 405/601(A) (West 2010)).

¶ 23                          III. Appeal to the Review Board

¶ 24    Plaintiff appealed the hearing referee's decision to the Board. In her notice of appeal, plaintiff attached a letter she had written, asserting that (1) that ABM provided no evidence of her "alleged" misconduct, and (2) that ABM terminated her because of her age[6] and made "untrue statements regarding [her] character."[7] Plaintiff further asserted that the job at the new location was "a completely new job" with different hours, pay, and regulations, and that the duties at the location required her to be "in close contact with sugar." Plaintiff claimed that she has "high levels of glucose in [her] blood" and that she has a "nasal and sinus disorder." She stated that continuing to work at the new location would "cause [her] serious health problems." Plaintiff argued that, in spite of ABM's accommodation policy allowing employees five business days to provide a doctor's note or proof of sickness, she was prohibited from proving her health problems to ABM because her "case was closed" on May 3, 2011, one day after ABM terminated her from her position at Roosevelt. Plaintiff stated that she did not testify to her medical conditions during the telephone hearing with the hearing referee because she had prepared to testify only about her alleged misconduct and not about her reasons for leaving her employment. Plaintiff attached to her notice of appeal a note from Dr. Richard Izewski, who stated that he had treated plaintiff since 2004 and that plaintiff "had [a] nasal and sinus disorder that required ENT care."

¶ 25    On September 23, 2011, the Board issued a decision affirming the hearing referee's decision. The Board examined the record and found that the further taking of evidence was unnecessary. The Board determined that both the factual record and the law supported the hearing referee's decision, and it incorporated the hearing referee's decision as part of its own decision.

¶ 26                          IV. Administrative Review

¶ 27    Plaintiff filed a *pro se* complaint for administrative review in the circuit court of Cook County. On February 1, 2012, without providing any explanation, the trial court reversed the Board's decision. IDES filed a timely notice of appeal, and this appeal followed.

¶ 28                                ANALYSIS

¶ 29    IDES raises one issue on appeal: whether the Board's decision finding that plaintiff voluntarily left her employment without good cause is clearly erroneous.

---

[6]The record does not disclose plaintiff's age.

[7]Plaintiff does not allege which statements were untrue.

¶ 30                                    I. Standard of Review

¶ 31    In an administrative review proceeding, this court reviews the Board's decision, not the trial court's decision. *Livingston v. Illinois Department of Employment Security*, 375 Ill. App. 3d 710, 714 (2007). The Board is the trier of fact and its "purely factual findings are '*prima facie* true and correct.' " *Livingston*, 375 Ill. App. 3d at 714 (quoting *Horton v. Department of Employment Security*, 335 Ill. App. 3d 537, 540 (2002), and citing 735 ILCS 5/3-110 (West 2004), and 820 ILCS 405/1100 (West 2004)). A court conducting administrative review will not reweigh the evidence or substitute its judgment for that of the administrative agency. *Horton*, 335 Ill. App. 3d at 540.

¶ 32    This court has determined that the "question of whether an employee left work without good cause attributable to her employer involves a mixed question of fact and law." *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 942 (2010) (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001)). The question is factual, in part, because it requires considering whether the facts support the Board's finding that plaintiff left work without good cause. *Horton*, 335 Ill. App. 3d at 540. The question is also legal, in part, because discharge and constructive voluntary leaving are legal terms and concepts, which require interpretation. *Horton*, 335 Ill. App. 3d at 540 (citing *AFM Messenger*, 198 Ill. 2d at 392). When reviewing a mixed question of law and fact, we use the clearly erroneous standard of review. *Childress*, 405 Ill. App. 3d at 942 (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001)). The Board's decision will be found "clearly erroneous" only where the reviewing court, on the entire record, is " 'left with the definite and firm conviction that a mistake has been committed.' " (Internal quotation marks omitted.) *Horton*, 335 Ill. App. 3d at 540-41 (quoting *AFM Messenger*, 198 Ill. 2d at 395).


¶ 33              II. The Board's Finding of Voluntary Leaving Without Good Cause

¶ 34    The purpose of the Act is to relieve the economic insecurity and hardship caused by an involuntary loss of employment. 820 ILCS 405/100 (West 2010). The Act was enacted to benefit persons who become unemployed through no fault of their own. *Messer & Stilp, Ltd. v. Department of Employment Security*, 392 Ill. App. 3d 849, 856 (2009). The Act is to be liberally construed to favor the awarding of benefits to accomplish its primary purpose of alleviating economic distress caused by involuntary unemployment. *Acevedo v. Department of Employment Security*, 324 Ill. App. 3d 768, 771 (2001). However, receipt of unemployment benefits is conditioned on eligibility under the Act, and plaintiff has the burden of proving that she satisfies the eligibility requirements. *Childress*, 405 Ill. App. 3d at 943.


¶ 35                                    A. Voluntary Leaving

¶ 36    The Act states that "[a]n individual shall be ineligible for benefits for the week in which he or she has left work voluntarily without *good cause* attributable to the employing unit." (Emphasis added.) 820 ILCS 405/601(A) (West 2010). This court has determined that, under the Act, "good cause" for voluntarily leaving one's employment "results from circumstances

which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." (Internal quotation marks omitted.) *Collier v. Department of Employment Security*, 157 Ill. App. 3d 988, 992 (1987). "A substantial and unilateral change in employment may render employment unsuitable so that good cause *** is established; but, generally, [plaintiff's] dissatisfaction with neither [her] hours nor [her] wages constitutes good cause to leave for purposes of entitlement to unemployment compensation." *Acevedo*, 324 Ill. App. 3d at 772. A voluntary leaving is not attributable to the employer unless the employee's cause for leaving is within the employer's control, which may include, but is not limited to, situations in which the employer has implemented a substantial change in the employment conditions. 56 Ill. Adm. Code 2840.101(c) (2010); see also *Jaime v. Director*, 301 Ill. App. 3d 930, 936-37 (1998) (holding that the employer moving its plant 16 miles away can amount to a substantial change in the claimant's circumstances and could create good cause for voluntary termination). Furthermore, the employee must make "a reasonable effort to resolve the cause" of her leaving "when such effort is possible." 56 Ill. Adm. Code 2840.101(b) (2010); see also *Henderson v. Department of Employment Security*, 230 Ill. App. 3d 536, 539-40 (1992) (holding that plaintiff's voluntary termination of employment was not for good cause attributable to his employer because, even though he was demoted and received a pay cut, he did not resign until seven months later and he never filed a grievance or followed any other procedure to contest the demotion and pay cut).

¶ 37 Plaintiff argued before the Board that her transfer to the new location forced her to accept "a completely new job" with different hours, pay, and regulations. However, changes in pay, duties, and regulations alone are insufficient to show good cause attributable to the employer for purposes of receiving benefits. *Acevedo*, 324 Ill. App. 3d at 772. Plaintiff must prove that the change in her working conditions was unilateral and substantial. *Acevedo*, 324 Ill. App. 3d at 772. In addition, in this case, the evidence shows that plaintiff agreed to the demotion. She argues that "sugar" in the air caused a medical problem but she provides no medical evidence to support that assertion and she requested no medical accommodation from her employer.

¶ 38 During the telephone hearing, Scarlech testified that plaintiff requested to be transferred and demoted in exchange for continued employment with ABM, and plaintiff did not dispute this testimony. Any changes in plaintiff's working conditions were not unilateral because plaintiff bargained with ABM for them in exchange for her continued employment with the company. In addition, plaintiff failed to testify to the specific changes her job duties that she experienced at the new location other than that she was exposed to sugar and dust. In her testimony, she did not explain how her job duties at the new location differed from her duties at Roosevelt, nor did she testify to a specific change in her wages. Therefore, she did not present any evidence to the Board to indicate that any changes in her employment were substantial. *Acevedo*, 324 Ill. App. 3d at 772 (dissatisfaction with hours or wages does not amount to a substantial change necessary to show good cause for voluntary termination).

¶ 39 Finally, the evidence in the record indicates that plaintiff did not request an accommodation from ABM to remedy the conditions that caused her to leave her employment. The Illinois Administrative Code requires employees to make "a reasonable

effort to resolve the cause" of her leaving "when such effort is possible." 56 Ill. Adm. Code 2840.101(b) (2010). Plaintiff testified that, after working at the new location for one day, she informed her union representative that she was not returning to ABM and asked her representative to find her new employment. She did not file any grievances with ABM, nor did she inform anyone at ABM of her problems at the new location. *Henderson*, 230 Ill. App. 3d at 539-40 (denying benefits after finding that the plaintiff never filed a grievance challenging the complained-of changes in his employment status). Since plaintiff's complained-of health problems commenced after ABM transferred her to the new location on West Blackhawk Street, it stands to reason that plaintiff could have requested a transfer to a new worksite free of elements that aggravated her complained-of health condition. 56 Ill. Adm. Code 2840.101(b) (2010) (requiring employees to make a reasonable effort to resolve the cause of their intended leaving when it is reasonable to do so).

¶ 40    In her letter to the Board attached to her notice of appeal, plaintiff argued that she was unable to request an accommodation from ABM because her "case was closed" before she started working at the new location. We do not find this argument persuasive in light of plaintiff's testimony that she did not contact ABM to inform them that she was terminating her employment. Her actions were to just leave her job. The record contains no evidence that plaintiff ever attempted to work with ABM to request an accommodation. For these reasons, we cannot say that the Board's finding that plaintiff voluntarily left her employment without good cause attributable to ABM is clearly erroneous.

¶ 41                                   B. Medical Exception

¶ 42    Plaintiff argued before the hearing referee and the Board that she had to leave her employment with ABM for medical reasons. Section 601(B)(1) of the Act states that section 601 does not apply to a plaintiff who leaves work voluntarily because "she is deemed physically unable to perform *** her work by a licensed and practicing physician." 820 ILCS 405/601(B)(1) (West 2010). To demonstrate that a health concern is a sufficient and justifiable reason for terminating employment, a plaintiff must: "(1) offer competent testimony that adequate health reasons existed to justify [her] leaving work on the date [she] terminated [her] employment; (2) have informed the employer of the health problem; and (3) be available, where reasonable accommodation is made by the employer, for work which is not inimical to [her] health." *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 812 (1991). As stated above, plaintiff neither informed ABM of her health problem, nor did she make herself available to continue working for ABM subject to an accommodation that would not negatively impact her health.

¶ 43    Plaintiff also failed to offer competent testimony that adequate health reasons existed to justify her leaving work. In *Zbiegien v. Department of Labor*, 156 Ill. App. 3d 395, 397 (1987), the plaintiff left his employment because his eyesight was deteriorating and he believed that he was growing increasingly unsafe performing his job duties. The plaintiff submitted a letter from his ophthalmologist to the hearing referee, which stated that the plaintiff could perform work that did not present an undue risk of eye injury and did not require the need of " 'simultaneous binocular vision.' " *Zbiegien*, 156 Ill. App. 3d at 397.

This court found that the letter "contained only vague instructions on work plaintiff was to avoid," and that plaintiff's testimony before the hearing referee did not address the specific problems at work caused by his poor eyesight. *Zbiegien*, 156 Ill. App. 3d at 401.

¶ 44 In the instant case, plaintiff did not submit a letter from a doctor explaining her condition to the hearing referee. She testified that she has "a problem with sugar," but did not elaborate on the specifics of her "problem." She also testified that she never visited a doctor, but instead informed her cousin of her symptoms and her cousin passed the information to a medical doctor. The doctor prescribed plaintiff a medication and instructed her to drink milk, but plaintiff's testimony did not disclose the specific medication or the effect it had on her. When plaintiff appealed the hearing referee's decision to the Board, she stated that she had "high levels of glucose in [her] blood" and that she has a "nasal and sinus disorder." She submitted a letter from her doctor only after the hearing referee made his decision by attaching it to her notice of appeal to the Board. The letter explained that she had been treated since 2004 and suffered from nasal and sinus disorders.

¶ 45 Like in *Zbiegien*, these facts indicate that plaintiff failed to offer competent testimony to prove that adequate health reasons existed to justify plaintiff leaving her employment with ABM. *Zbiegien*, 156 Ill. App. 3d at 401. Plaintiff's testimony before the hearing referee did not address the specifics of her disorder and she did not provide evidence from a physician to corroborate her health problems. Based on the record, we cannot say that the Board's decision that plaintiff terminated her employment for purely personal reasons unrelated to a health problem was clearly erroneous.

¶ 46 Plaintiff argued before the Board that she was not prepared to testify about her medical condition before the hearing referee because she was given no notice that the hearing would cover voluntary leaving. However, the hearing notice that both parties received from the hearing referee stated that one issue to be determined at the hearing was whether plaintiff voluntarily left her employment, pursuant to section 601(A). 820 ILCS 405/601(A) (West 2010). The notice stated that the hearing was being held to determine whether the plaintiff was discharged or whether she left voluntarily, and the notice cited sections 601(A) and 602(A). 820 ILCS 405/601(A), 602(A) (West 2010). Plaintiff was required to follow the statute and the notice requirements she was given.

¶ 47 CONCLUSION

¶ 48 For the foregoing reasons, we reverse the order of the trial court and reinstate the decision of the Board. The factual record strongly supports the Board's findings of fact, and the relevant case law supports its interpretation of the Act. Therefore, we cannot say that its decision that plaintiff is ineligible for unemployment insurance benefits is clearly erroneous.

¶ 49 Reversed.