2020 IL App (1st) 191866-U

No. 1-19-1866

November 9, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TAKIMA GATSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | No. 19 L 50324 |
| THE DIRECTOR OF EMPLOYMENT SECURITY, THE | ) | |
| BOARD OF REVIEW, and AIDIN HOME, LTD. c/o | ) | |
| EMPLOYER SERVICES COMPANY, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where plaintiff voluntarily left her employment without good cause attributable to her employer, the Board of Review's denial of unemployment benefits is affirmed.

¶ 2    Plaintiff Takima Gatson appeals *pro se* from an order of the circuit court of Cook County,

affirming a final administrative decision by defendant, the Board of Review of the Department of

Employment Security (Board). The Board found that plaintiff left her employment voluntarily

without good cause attributable to her employer, and thus, was ineligible for unemployment insurance benefits. On appeal, plaintiff challenges the denial of benefits, contending that she was hired under false pretenses, there was no work available, and the Board's determination contains false statements. We affirm.

¶ 3                                              **BACKGROUND**

¶ 4      The record shows plaintiff was employed as an in-home caregiver with Aidin Home, Ltd. (Aidin) from December 2, 2018, until January 3, 2019. On January 6, 2019, plaintiff applied to the Department of Employment Security (Department) for unemployment insurance benefits. Plaintiff reported her reason for separation being she had been laid off due to a lack of work.

¶ 5      Aidin protested plaintiff's claim for benefits. Phil Barron, a claims supervisor with Employer Services Company, Aidin's authorized agent, submitted a written response to the Department stating plaintiff had voluntarily quit her job on January 7, 2019. Barron stated that plaintiff telephoned Aidin on January 7 and resigned because financial problems made it difficult for her to drive to work. Barron asserted that plaintiff quit the job of her own volition for personal reasons, although work was available. Barron noted that plaintiff had been earning $11 per hour.

¶ 6      Barron attached to the written protest Aidin's log page for plaintiff, showing that plaintiff called Aidin on January 7 and resigned, stating she was having financial issues that made it difficult to fuel her vehicle to drive to work. The log further showed that on January 5 plaintiff called off stating she could not work because of her son's game. In addition, on January 6, Aidin notified plaintiff that there was a shift available from 3 p.m. to 11 p.m. in Chicago. On January 7, Aidin notified plaintiff that there was a shift available in Crete every Tuesday and Thursday from 7 a.m. to 10 a.m. Plaintiff was instructed to call if she was available or interested in working the shift.

¶ 7    A Department claims adjudicator conducted an initial telephone interview with plaintiff to assess her eligibility for benefits. During the interview, plaintiff stated she left her employment because she did not have money to get to work. Plaintiff stated that when she was hired, Aidin made it seem like they had a lot of work available. Plaintiff signed up to be on call but did not receive any calls. Plaintiff was scheduled to work Tuesday, Wednesday, and Thursday for 12 hours a week. She stated, "I have to put premium gas in my car and I could not afford driving to places for only a couple hours per day." Prior to leaving, plaintiff asked Aidin for more hours. She claimed the original hiring agreement was changed because she was not scheduled for enough hours. On January 7, plaintiff informed a manager, Charles, that she was leaving Aidin. She told Charles that she could not afford to go to Orland Park to see a client for two hours. She did not feel it was worth it. Plaintiff acknowledged she had a choice to remain employed at Aidin.

¶ 8    The claims adjudicator issued a written determination finding that plaintiff voluntarily left her employment with Aidin for personal reasons. The adjudicator further found that because Aidin did not have the ability to control such conditions or acts, plaintiff left work voluntarily without good cause attributable to her employer. Consequently, plaintiff was ineligible for unemployment insurance benefits under section 601(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (West 2018)).

¶ 9    Plaintiff filed a written request for reconsideration of the claims adjudicator's determination and an appeal to the Department referee. Plaintiff stated she had been receiving unemployment benefits, but it was not enough, so she applied for a job with Aidin. Aidin told her that she would be paid $11 an hour and they also had on-call positions available "all day" that paid $16.50 per hour. Plaintiff asserted, "that was a lie" because she received only two to three call-in

offers a week. Aidin sent text messages regarding call-in opportunities, and employees called in if they wanted the positions. Plaintiff stated she called in immediately, and the positions were already filled. During her first two weeks, plaintiff worked over 20 hours a week and in the next two weeks she worked 15 hours a week. Because the job was not going as she had been told, plaintiff requested a permanent schedule and was assigned 12 hours per week. Plaintiff stated she could not afford to drive her vehicle to jobs that were only two to three hours per day. She claimed Aidin told her they had work available, but they did not. Plaintiff asserted the primary reason she accepted employment with Aidin was because they promised she would be paid $16.50 per hour for call-in work. She would not have applied for the job if she knew that was not true. Plaintiff accused Aidin of "fraud" and stated, "they lied to me and used me."

¶ 10    After reconsideration, the claims adjudicator again concluded, based on her original findings and reasoning, plaintiff was ineligible to receive benefits. Plaintiff's appeal was then filed with the Department referee for a telephone hearing.

¶ 11    Administrative law judge (ALJ) Thomas Plotke conducted a telephone hearing to consider plaintiff's appeal. At the outset, Plotke noted he had reviewed the adjudicator's determination, plaintiff's written appeal, and Aidin's written protest, including the log page. Aidin also submitted plaintiff's monthly work schedules indicating the hours she had worked each day. Plaintiff testified under oath that she was employed as a caregiver with Aidin from December 2, 2018, to January 3, 2019. She worked an average of 18 hours per week at a rate of $11 per hour. Plaintiff worked three days a week from 10 a.m. to 2 p.m. caring for one individual in Orland Park. Plaintiff testified that she stopped working because she could not afford to continue driving to Orland Park for four hours a day, she would spend half of her money earned on gas and "[i]t wasn't worth it." She testified,

"I left for lack of hours." Plaintiff acknowledged she accepted Aidin's job offer of $11 per hour. She explained, however, that the only reason she accepted the position was because Aidin told her that they would be texting additional job offers "all day, every day" that paid $16.50 an hour, but this never happened. Plaintiff also acknowledged work was available caring for the same client at $11 per hour, but she wanted the higher-paying clients. Plaintiff explained that Aidin sent text messages two or three times a week, offering the call-in jobs to multiple people, and when she called to accept a position, she was told it was already filled.

¶ 12    Twanna Gildon, Aidin's staffing coordinator in Orland Park, testified that plaintiff called her on the telephone and resigned. Plaintiff told Gildon that plaintiff was experiencing financial issues and could not afford to put fuel in her vehicle to drive to work. At orientation, caregivers select which geographical zone they wish to work in and Aidin tries to assign caregivers close to their home. When plaintiff was hired, it was understood that she would be paid $11 an hour in the geographical zone she had chosen. Continuing work was available for plaintiff if she had not quit. At the time of plaintiff's resignation, she was not in any danger of being fired or laid off for any reason.

¶ 13    In rebuttal, plaintiff testified she had been receiving unemployment when she applied for the job with Aidin. Plaintiff claimed Aidin erroneously informed the Department that she worked 30 hours one week and was paid $12.50 per hour. ALJ Plotke advised plaintiff he was aware of how much money she earned from Aidin and that factor did not have any bearing on his decision regarding her eligibility for unemployment benefits.

¶ 14    Gildon stated that all caregivers at Aidin sign a job description which indicates that they will be paid $11 an hour. Plaintiff was not told she would be paid $16.50 an hour for a base client.

When a caregiver accepts a shift offered for that same day, the caregiver is paid time-and-a-half for that shift.

¶ 15    ALJ Plotke issued a written decision affirming the claims adjudicator's determination finding plaintiff not eligible for unemployment benefits. In his factual findings, Plotke stated plaintiff accepted the part-time position with Aidin knowing the geographic location that she would be assigned to work and the wages that she would be paid. Plotke found that plaintiff resigned because she wanted to earn more money in wages, and that continuing work was available for her had she not resigned. He further found Gildon's testimony credible. In addition, Plotke found there was insufficient evidence that plaintiff was subject to conditions or abuse that rendered the job unsuitable for her, and therefore, her reason for leaving work was "purely personal" and not attributable to her employer. Based upon a preponderance of the evidence, Plotke concluded that plaintiff voluntarily left work without good cause attributable to her employer, and consequently, was disqualified from receiving benefits under section 601(A) of the Act.

¶ 16    Plaintiff appealed Plotke's decision to the Board. Plaintiff stated that during orientation, she was told she would be paid $11 an hour and that Aidin would send mass text messages for jobs paying $16.50 an hour. Plaintiff stated that Aidin "made it seem like they had tons of work at 16.50 an hour," and was the primary reason she accepted the position. Plaintiff received one text offer a day, and every day when she called to accept the offer, she was told that the job was already filled. Plaintiff stated she did not believe she voluntarily left her employment because Aidin lied to her about the jobs available at $16.50 per hour and there was a lack of work available. Plaintiff alleged that Aidin took advantage of her and used her.

¶ 17    The Board reviewed the record, including the transcript from the telephone hearing, and considered the claims raised in plaintiff's appeal. It found that the record adequately set forth the evidence, and that no further evidentiary proceedings were necessary. In its factual findings, the Board stated plaintiff worked as a part-time caregiver earning $11 per hour and accepted the position because she wanted to work. The Board noted plaintiff testified that she received several texts advising her of available positions paying $16.50 per hour, she immediately contacted her employer, but was always informed the job was no longer available. Plaintiff explained that Aidin might have offered four to five of the higher-paying positions each week, but there were 50 employees available. Plaintiff stated she could not continue accepting three-hour shifts because it was not worth driving that far for $11 per hour. The Board found the testimony showed that plaintiff accepted the position in Orland Park, but thereafter called to resign because she wanted to earn more money. There was continuing work available for her had she not resigned. The Board found insufficient evidence that plaintiff was subject to conditions or abuse rendering the job unsuitable for her. It pointed out that plaintiff chose the zone for her assignments and accepted the client in Orland Park knowing she lived in Hazel Crest and had to travel to Orland Park for the job. Therefore, the Board found that plaintiff left her job for "a compelling, but personal reason" not attributable to her employer. The Board concluded that the ALJ's decision that plaintiff was not eligible for unemployment benefits was supported by the record and the law, and affirmed that decision.

¶ 18    Plaintiff appealed the Board's ruling to the circuit court of Cook County. The court held a hearing and affirmed the Board's decision denying plaintiff unemployment insurance benefits. Plaintiff now appeals.

¶ 19                                    **ANALYSIS**

¶ 20    Initially, we observe that plaintiff's *pro se* brief fails to comply with the requirements in Supreme Court Rule 341(h) (eff. May 25, 2018) and Rule 342 (eff. Oct. 1, 2019). Plaintiff used the form brief approved by the Illinois Supreme Court. However, her brief fails to present the facts and procedural history necessary to explain the case, fails to articulate a cohesive legal argument, and is completely devoid of any citation to legal authority. Based on plaintiff's noncompliance with these rules, her appeal is subject to dismissal. *Marzano v. Department of Employment Security*, 339 Ill. App. 3d 858, 861 (2003). Nevertheless, because the issue is apparent, and we have the benefit of a cogent appellees' brief (see *Twardowski v. Holiday Hospitality Franchising, Inc.,* 321 Ill. App. 3d 509, 511 (2001)), we choose to entertain the appeal (see *Harvey v. Carponelli*, 117 Ill. App. 3d 448, 451 (1983)).

¶ 21    In addition, plaintiff submitted with her reply brief numerous documents not included in the record on appeal, including emails she exchanged with her former employer in April 2020, after filing her opening brief in this appeal. Our review is confined to the issues, arguments and evidence presented to the Board. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998). We are precluded from considering the information contained in these documents as they are not properly before this court and cannot be used to supplement the record. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1024 (2003).

¶ 22    Plaintiff challenges the denial of benefits by the Board. She contends she was hired under false pretenses because Aidin "lied" to her about the hours and pay available. Plaintiff claims she did not agree to part-time work and only agreed to work for Aidin because they told her she would earn a large amount of money due to the high volume of call-in work that paid $16.50 per hour.

Plaintiff asserts that Aidin had no work available for her as her hours decreased weekly, and she did not receive texts for call-in work. She also claims the Board's decision contains false statements because she never said that she received "several" texts for the call-in positions.

¶ 23    Defendants respond that the Board's finding plaintiff voluntarily left her employment for personal reasons was not against the manifest weight of the evidence, and its determination that she left without good cause attributable to her employer was not clearly erroneous. Defendants argue that the evidence shows that plaintiff chose the geographical location for her work and that she knew she would be paid $11 per hour. They further argue that it was the Board's responsibility to determine the credibility of the witnesses and the Board did not have to accept plaintiff's testimony that Aidin lied to her about the hours and pay available. Defendants also argue that plaintiff's dissatisfaction with her hours did not constitute good cause for her to leave her employment where there was no unilateral change in her work conditions and Aidin had work available for her.

¶ 24    This court reviews the final decision of the Board rather than the ruling of the circuit court. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. The Board's factual findings are considered *prima facie* true and correct and will not be disturbed unless they are against the manifest weight of the evidence. *520 South Michigan Avenue Associates v. Department of Employment Security*, 404 Ill. App. 3d 304, 312 (2010). Under this standard, the Board's factual findings "must stand unless 'the opposite conclusion is clearly evident.' " *Id.* at 313 (quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998)). Where the record contains any evidence supporting the Board's factual findings, they are not against the manifest

weight of the evidence and must be sustained. *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16.

¶ 25 It is the Board's responsibility to weigh the evidence, determine the credibility of the witnesses, and resolve conflicts in the testimony. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 329 (2009). If the issue on review merely involves conflicting testimony and witness credibility, the Board's determination should be sustained. *520 South Michigan Avenue*, 404 Ill. App. 3d at 318.

¶ 26 The ultimate question of whether an employee voluntarily left work without good cause attributable to her employer is a mixed question of fact and law reviewed under the clearly erroneous standard. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 32. The Board's decision will be found clearly erroneous only where a review of the entire record leaves the reviewing court with a definite and firm conviction that a mistake has been made. *Id.* It is plaintiff's burden to prove she meets the eligibility requirements for benefits. *Id.* ¶ 34.

¶ 27 Pursuant to section 601(A) of the Act, a person who leaves her job voluntarily and without good cause attributable to her employer is not eligible for unemployment insurance benefits. 820 ILCS 405/601(A) (West 2018); *Nykaza v. Department of Employment Security*, 364 Ill. App. 3d 624, 625 (2006). "Good cause results from circumstances that produce pressure to terminate employment that is both real and substantial and that would compel a reasonable person under the circumstances to act in the same manner." *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 943 (2010). "A voluntary leaving is not attributable to the employer unless the employee's cause for leaving is within the employer's control, which may include, but is not limited to, situations in which the employer has implemented a substantial change in the

employment conditions." *Lojek*, 2013 IL App (1st) 120679, ¶ 36 (citing 56 Ill. Adm. Code 2840.101(c) (2010)). In addition, "the employee must make 'a reasonable effort to resolve the cause' of her leaving 'when such effort is possible.' " *Id.* (quoting 56 Ill. Adm. Code 2840.101(b) (2010)). Generally, a plaintiff's dissatisfaction with her hours or wages does not constitute good cause to leave her employment. *Lojek*, 2013 IL App (1st) 120679, ¶ 36.

¶ 28    Here, the record shows the Board found plaintiff left her employment for "a compelling, but personal reason," not attributable to her employer. The Board found plaintiff accepted the position as a part-time caregiver earning $11 per hour because she wanted to work. The Board noted plaintiff testified at the telephone hearing that she received several text messages from Aidin advising her of available positions paying $16.50 per hour, she immediately contacted Aidin in an attempt to accept those positions, but was always told that the positions had been filled and were no longer available. Plaintiff explained that Aidin sent the text messages to multiple employees. The Board found plaintiff had chosen the geographic zone for her assignments and accepted the position in Orland Park for $11 per hour knowing she would have to travel there from her home in Hazel Crest. The Board noted plaintiff could not continue accepting three-hour shifts because it was not worth driving that far for $11 per hour. Accordingly, the Board found there was continuing work available for plaintiff, but she resigned because she wanted to earn more money. Our review of the record reveals the Board's factual findings were not against the manifest weight of the evidence. *Woods*, 2012 IL App (1st) 101639, ¶ 16.

¶ 29    Moreover, the record shows that plaintiff resigned because she was dissatisfied with her wages and work hours. Plaintiff was eager to work the call-in shifts that paid $16.50 per hour but was unsuccessful in obtaining those positions. Continuing work was available for plaintiff at the

regular pay rate of $11 per hour. Plaintiff's dissatisfaction with her wages and work hours did not constitute good cause to leave her employment. *Lojek*, 2013 IL App (1st) 120679, ¶ 36.

¶ 30    The record thus shows plaintiff's failure to meet her burden of proving her eligibility for benefits under the Act. *Id.* ¶ 34. Based on this record, we find that the Board's determination that plaintiff was not eligible for unemployment benefits because she voluntarily left her employment without good cause attributable to her employer was not clearly erroneous. *Id.* ¶ 32.

¶ 31                                    **CONCLUSION**

¶ 32    For these reasons, we affirm the final administrative decision of the Board of Review.

¶ 33    Circuit court affirmed; Board's decision confirmed.