2021 IL App (1st) 210054-U

SIXTH DIVISION
October 22, 2021

No. 1-21-0054

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| ALLISON YOUNG, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | No. 20 L 50047 |
| THE DEPARTMENT OF EMPLOYMENT SECURITY; | ) | |
| DIRECTOR OF EMPLOYMENT SECURITY; THE | ) | |
| BOARD OF REVIEW; and CONSTRUCTION | ) | |
| CONTRACTING SERVICES, INC., | ) | Honorable Daniel P. Duffy, |
| | ) ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Pierce and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Board's decision upholding the denial of plaintiff's unemployment benefits is affirmed where the record supported a finding that plaintiff voluntarily left employment without good cause attributable to the employer.

¶ 2    Plaintiff Allison Young appeals *pro se* from an order of the circuit court affirming a decision by the Board of Review (Board) of the Department of Employment Security (Department), which upheld a referee's affirmation of a claims adjudicator's denial of

unemployment benefits. On appeal, Ms. Young argues that the Board erred because she was terminated from her position with Construction Contracting Services, Inc. (CCSI), and did not voluntarily leave without good cause. We affirm.

¶ 3                                                I. BACKGROUND

¶ 4      On July 28, 2019, Ms. Young filed a claim for unemployment benefits with the Department. In her written responses on the "Misconduct Questionnaire," filed as a part of her claim, Ms. Young stated that she began working for CCSI on April 24, 2019, and that at her 90-day performance review, Calvin Williams, CCSI's owner, told her that he was unwilling or unable to increase her salary, "although he [had] stated differently at the time of hire." Mr. Williams then asked if Ms. Young wanted to remain with CCSI. Ms. Young began to respond, "I won't be able to stay—" when Mr. Williams "interrupted" her and stated that would be her two-weeks' notice, with her last day to be July 26, 2019. Ms. Young answered "[o]k," and, on the questionnaire, listed July 26, 2019, as the date she was discharged.

¶ 5      In response to Ms. Young's claim, Mr. Williams filed a written protest on behalf of CCSI. According to that protest, "it [wa]s not true that Ms. Young was terminated/fired. The fact [wa]s that Ms. Young resigned after making demands for higher wages and other terms that were denied." Mr. Williams explained that Ms. Young began to complain about her salary by May 8, 2019, just a few weeks after starting her position. She took days off, arrived late, and left early for personal reasons. Ms. Young then requested a salary increase from $38,000 to $52,000, with a $1000 signing bonus. Mr. Williams said he could not provide the increase and he did not want to lose Ms. Young as an employee, but she would have to "make a decision about her employment" at CCSI. Ms. Young later stated that she could not continue working for CCSI at her current salary because her rent had increased. She had not yet found another position, however, so she agreed to

work for two more weeks while Mr. Williams sought a replacement, whom she offered to train. Mr. Williams said in his protest letter that "[r]ather than have her continue to call off, come in late and leave early I felt she did not want to be here, so I offered that she permanently leave after two weeks. I figure[d] this would be enough time for me to find a replacement. She agreed." He also said that he would "have loved to have Ms. Young stay working with us under our original agreement of salary and compensation.".

¶ 6    On August 14, 2019, a claims adjudicator interviewed Ms. Young by telephone. On August 19, 2019, the claims adjudicator denied Ms. Young's claim, finding that she voluntarily left CCSI because she did not receive an expected raise, and did not leave with good cause.

¶ 7    Ms. Young filed a notice of reconsideration and appeal in which she sought reconsideration by the claims adjudicator and, if that was denied, a hearing by a Department referee. In her appeal, Ms. Young argued that Mr. Williams issued a "forced resignation" when he asked if she wanted to stay, then interrupted her and said that would be her two-weeks' notice. Had Mr. Williams allowed her to speak, Ms. Young would have stated that she could not stay at her current rate of compensation for the duration of her employment, and she would have asked if they could establish a measurable scale to grade her performance and whether he would reconsider a salary increase in another 90 days. Ms. Young also explained that she would not just impulsively quit and potentially jeopardize her ability to provide for her two children. On August 28, 2019, the claims adjudicator denied the request for reconsideration.

¶ 8    On September 13, 2019, the referee held a telephone hearing with Ms. Young and Mr. Williams. There is a transcript of that hearing in the record. Ms. Young testified that she worked for CCSI as an office assistant for about 90 days. She testified that on July 16, 2019, Mr. Williams forced her to resign or fired her by giving her a termination date.

¶ 9    In response to questions from Mr. Williams, Ms. Young agreed that at their July 16, 2019, meeting, she had proposed a salary increase to $52,000 with a $1000 signing bonus and other benefits, but she denied that she said she could no longer work at CCSI when Mr. Williams told her he was unable to pay the increase. Rather, Ms. Young testified, when she started to say that she could not afford to keep working at her current salary, Mr. Williams interrupted her and stated that she should consider that her two-weeks' notice and that her last day would be July 26, to which Ms. Young responded, "[o]kay." She testified that if she had been able to continue the conversation, she would have asked to revisit her salary in another 90 days. Mr. Williams also asked Ms. Young about how many days of work she missed for personal reasons between May 8, 2019, and July 26, 2019, and Ms. Young said she did not know. Ms. Young acknowledged that Mr. Williams told her on numerous occasions that he wanted her to stay.

¶ 10    Responding to questions from the referee, Mr. Williams testified that Ms. Young was hired at a salary of $38,000, but requested an increase to $52,000, a $1000 signing bonus, paid vacation, and other demands, and stated she could not continue working at her original salary. Mr. Williams denied telling Ms. Young when he hired her that she would receive a raise in 90 days. Mr. Williams further testified that when Ms. Young began working, he "really liked" her attitude and her performance, but she began being tardy and missed many days, including a full week, for personal reasons, which "began to impact the company." Nevertheless, when Ms. Young stated she could not stay, Mr. Williams offered that she could remain in her position until they found a replacement, subject to a separation date. Mr. Williams said that if Ms. Young had wished to stay, Mr. Williams would have kept her.

¶ 11    Responding to questions from Ms. Young, Mr. Williams testified that when Ms. Young stated she could no longer work for her current salary, he took her statement as a two-weeks'

notice, but he denied ever telling Ms. Young she was fired. Mr. Williams testified that he interpreted Ms. Young's statements that she could not continue at her current salary as an indication that she wished to leave CCSI.

¶ 12     On September 16, 2019, the referee issued a decision affirming the adjudicator's denial. In her findings of fact, the referee found that, when Mr. Williams stated he could not pay the requested raise, Ms. Young told him that she could no longer work for the salary at which she was hired but agreed to stay for two weeks so Mr. Williams could replace her. The referee also found that Mr. Williams never told Ms. Young she was discharged. The referee concluded that CCSI had no control over Ms. Young's decision to leave, she could have continued to work there, and she therefore voluntarily left without good cause attributable to CCSI.

¶ 13     On October 15, 2019, Ms. Young appealed to the Board. Her appeal mirrored her testimony at the hearing but incorporated some additional factual material. Ms. Young stated in her appeal that, on April 8, 2019, she interviewed with Bridgette Steele, another CCSI employee. Ms. Young inquired about CCSI's performance review process, and Ms. Steele explained that, if hired, Ms. Young's performance would be reviewed after 90 days, at which point she could receive a merit-based salary increase. Ms. Steele encouraged Ms. Young to discuss the policy with Mr. Williams and stated it was in the employee handbook, which Ms. Young never received. On April 10, 2019, Ms. Young received an offer from another company. On April 15, 2019, Ms. Young interviewed with Mr. Williams, who offered her an office assistant position with CCSI and confirmed what Ms. Steele had said regarding the performance review at 90 days and "how at that time merit increases are issued." According to Ms. Young's appeal, Ms. Steele called Ms. Young on April 19, 2019, and offered her the position with a $38,000 starting salary, "which will be renegotiated in 90 days during the performance review."

¶ 14    Ms. Young said in her appeal that, on July 3, 2019, Mr. Williams requested an outline of her salary renegotiation proposal, which she submitted the same day and which Mr. Williams stated they would discuss following the July 4 holiday. Ms. Young was out of the office from July 4 to July 15 for the holiday and personal and medical issues.

¶ 15    Ms. Young summarized her discussion with Mr. Williams on July 16, 2019, as follows:

> "Mr. Williams informed me that he had reviewed my salary request proposal and that he was unable to pay me the amount requested. He stated that he did not think that I wished to continue with CCSI and accused me of interviewing with other companies during the week prior, although I informed him that I was ill. He then informed me that he has already begun interviewing my replacement during my absence. He then asked if I wanted to stay with CCSI? I responded, 'I am unable to stay—' He interrupted me and said, 'Well consider this your 2 week notice and your last day is July 26, 2019.' Realizing that I am being fired as opposed to the 90 day performance review and salary negotiation which I was expecting and told that I would receive, I simply responded, 'Okay.' "

¶ 16    Ms. Young again stated in her appeal letter that, if Mr. Williams had allowed her to speak, she would have asked to stay on and review her salary again in 90 days. In her appeal, Ms. Young submitted the offer letters from CCSI and the other company, and her cover letter and resume. The offer letter from CCSI noted that her salary would be $38,000, but CCSI provided the opportunity for additional compensation through merit increases. The other company's starting offer was $46,000. Ms. Young explained that she had not introduced the information at the referee's hearing because she "was unaware that [Mr. Williams] would be dishonest thus presenting the need to gather and submit supporting documentation."

¶ 17    The Board issued its written decision on December 20, 2019. The Board declined to

consider the additional evidence Ms. Young submitted because she did not show that her failure to introduce the evidence before the referee was for reasons outside her control. The Board affirmed the decision of the referee, finding that, based on the record, Ms. Young voluntarily left her employment "due to not getting a salary increase." The Board also found that Ms. Young "was not subjected to such conditions as would have rendered the job unsuitable" based on the employer's unwillingness to raise her salary.

¶ 18    On January 23, 2020, Ms. Young filed a *pro se* complaint for administrative review in the circuit court appealing the Board's decision. Ms. Young filed more documents detailing financial hardships, including an eviction summons, credit report, notice that her repossessed vehicle would be sold, and her mother's death certificate. On July 13, 2020, the circuit court affirmed the Board's decision.

¶ 19                                II. JURISDICTION

¶ 20    Ms. Young timely filed her notice of appeal on July 24, 2020. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final orders of the circuit court in civil cases.

¶ 21                                III. ANALYSIS

¶ 22    Ms. Young now appeals *pro se* to this court, arguing that Mr. Williams fired her by issuing a "forced resignation" and setting an end date to her employment. Ms. Young contends that Mr. Williams was "dishonest and manipulative" about the salary renegotiation, that he was the first to present the idea of separation, and that he fired her for taking time off work. She further asserts that she would not have willingly jeopardized her ability to provide for her children by voluntarily leaving employment.

¶ 23    Initially, we note that Ms. Young attached to her brief the documents she presented for the

first time to the Board and circuit court, as well as a demand for rent from her landlord, which she presents for the first time on appeal. We will not consider the documents Ms. Young submitted for the first time to the circuit court, or alongside her brief to this court. Nor will we consider the documents that the Board refused to consider on the basis that they had not been submitted to the referee. See 735 ILCS 5/3-110 (West 2018) ("No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court."). Further, we note that the Board did not err in declining to consider the documents Ms. Young submitted to the Board for its review but did not provide to the claims adjudicator or referee, where Ms. Young claimed she did not see the need to submit the documents beforehand because she did not anticipate Mr. Williams's alleged dishonesty. See 56 Ill. Adm. Code 2720.315(c)(1)(B) (2019) (to submit new evidence before the Board, claimant must show that reasons for not introducing evidence before referee were not her fault and were outside her control).

¶ 24     In an appeal from the denial of unemployment benefits, we review the Board's decision, not the circuit court's. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. Here, the Board found that Ms. Young voluntarily left CCSI without good cause attributable to CCSI. Whether an employee left without good cause attributable to her employer presents a mixed question of law and fact and is reviewed under the clearly erroneous standard. *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 942 (2010) (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001)).

¶ 25     Under the clearly erroneous standard, we will reverse the Board's decision only if, on the entire record, we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395. The Board's

factual findings are taken as *prima facie* true and correct. 735 ILCS 5/3-110 (West 2018). We can therefore reverse the Board's finding only if it is against the manifest weight of the evidence, namely, "when the opposite conclusion is clearly evident." *Grafner v. Department of Employment Security*, 393 Ill. App. 3d 791, 796 (2009). We may not reweigh the evidence or substitute our judgment for the Board's. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 31. Nor may we reassess the witnesses' credibility or resolve conflicts in the testimony. *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 671 (2007).

¶ 26 Section 601(A) of the Unemployment Insurance Act provides that an employee is ineligible for unemployment benefits if she left work voluntarily without good cause attributable to her employer. 820 ILCS 405/601(A) (West 2018). Good cause results from "circumstances that produce pressure to terminate employment that is both real and substantial and that would compel a reasonable person under the circumstances to act [in] the same manner." *Childress*, 405 Ill. App. 3d at 943. Dissatisfaction with wages or hours generally does not constitute good cause. *Lojek*, 2013 IL App (1st) 120679, ¶ 36.

¶ 27 The record here reflects that when Ms. Young began working at CCSI in April 2019, she expected to renegotiate her salary in 90 days. Then, at Ms. Young's 90-day review on July 16, 2019, Mr. Williams told Ms. Young that the company would not give her the raise that she requested. Ms. Young and Mr. Williams described their conversation at this meeting somewhat differently in their submissions to the Department and in the hearing before the referee. The Board determined, based on the record before it, that Ms. Young left voluntarily and was not fired. The Board also determined that Ms. Young left without good cause attributable to CCSI. The Board then affirmed the referee's decision upholding the denial of Ms. Young's unemployment benefits.

¶ 28 We cannot say that the factual finding by the Board that Ms. Young voluntarily left her

employment was against the manifest weight of the evidence. In his protest to Ms. Young's claim for benefits, Mr. Williams said that "it is not true that Ms. Young was terminated/fired. The fact is that Ms. Young resigned after making demands for higher wages and other terms that were denied." While later in that letter, Mr. Williams admits that he was troubled by the fact that Ms. Young had missed work, he concludes that he felt she did not want to work there any longer and confirms that he would have liked to have her continue working for CCSI. In his testimony to the referee, Mr. Williams denied telling Ms. Young that she would receive a raise after 90 days and recalled that when he told her that he could not grant the salary increase she requested, Ms. Young responded that she could not afford to stay on at her original salary. Mr. Williams also testified that he would have allowed Ms. Young to stay and that he made that clear to Ms. Young. Ms. Young herself confirmed this, explaining in her testimony at the telephone hearing that Mr. Williams told her on numerous occasions that he wanted her to stay.

¶ 29    Relying on Ms. Young's assertions to the claims adjudicator and on her misconduct questionnaire, as well as the somewhat conflicting testimony in the telephone hearing, the Board found that Ms. Young failed to credibly rebut Mr. Williams's testimony regarding the cause of separation. The Board determined that the record supported a finding that Ms. Young voluntarily left CCSI because she did not receive the requested raise.

¶ 30    Given the record in this case, we cannot say that the Board clearly erred. We may not reassess Ms. Young's and Mr. Williams's credibility, nor can we reweigh the evidence on appeal or substitute our judgment for the Board's. *Lojek*, 2013 IL App (1st) 120679, ¶ 31; *White*, 376 Ill. App. 3d at 671. We understand that when Ms. Young and Mr. Williams departed after their meeting on July 16, 2019, they may have had two different interpretations of what had happened. And while we appreciate that Ms. Young feels strongly that she would not have made a voluntary

decision to resign, we cannot say that the Board's decision that she left voluntarily was against the manifest weight of the evidence that was presented.

¶ 31    Because Ms. Young voluntarily left CCSI, she would only be eligible for unemployment benefits if she left with good cause attributable to CCSI. 820 ILCS 405/601(A) (West 2018). Ms. Young's claim is that that she was not given the raise she had hoped for, but this does not constitute good cause for leaving employment. *Lojek*, 2013 IL App (1st) 120679, ¶ 36. To the extent that Ms. Young's claim is that she had cause to leave because she was explicitly promised a raise after 90 days and the employer reneged on that promised, the Board clearly found that the evidence did not support this claim and the Board's decision was not against the manifest weight of the evidence.

¶ 32                                    IV. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the Board.

¶ 34    Affirmed.