# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Walls v. Department of Employment Security, 2013 IL App (5th) 130069**

---

| | |
|---|---|
| Appellate Court Caption | JOSHUA A. WALLS, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, Board of Review, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-13-0069 |
| Rule 23 Order filed<br>Motion to publish<br>granted<br>Opinion filed | July 17, 2013<br><br>August 16, 2013<br>August 16, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff coal miner was properly denied unemployment benefits because he left work without good cause attributable to his employer, notwithstanding his contentions that he was not provided proper safety equipment when he went into the mines, since plaintiff did not report the alleged violations until after he quit and he failed to exercise options other than quitting to resolve his concerns about safety. |
| Decision Under Review | Appeal from the Circuit Court of Saline County, No. 12-MR-56; the Hon. Todd D. Lambert, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Joshua Walls, of Eldorado, appellant *pro se*.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellee.

Panel

PRESIDING JUSTICE SPOMER delivered the judgment of the court, with opinion.

Justices Chapman and Cates concurred in the judgment and opinion.


**OPINION**

¶ 1      The plaintiff, Joshua A. Walls, filed a complaint for administrative review of a decision of the Illinois Department of Employment Security Board of Review (Board). The Board determined that, pursuant to section 601(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (West 2010)), the plaintiff was disqualified from receiving unemployment benefits because he voluntarily left work without good cause attributable to his employer. From the circuit court's order, the plaintiff appeals. For the reasons that follow, we affirm.

¶ 2                              BACKGROUND

¶ 3      The plaintiff was employed by Big Buck Construction, Inc. (Big Buck), as a miner from April 2011 to April 2012, at which time he left Big Buck. After he left Big Buck, the plaintiff filed a claim with the Illinois Department of Employment Security (IDES) for unemployment benefits, stating that he left his job because he believed that Big Buck was asking its employees to work in unsafe conditions. Specifically, the plaintiff alleged that he was asked to go down into the mines without proper safety equipment, namely, a texter and a spotter.[1] The plaintiff also reported this information to the federal Mine Safety and Health Administration (MSHA). Big Buck filed a response that stated that it was aware that the plaintiff had reported the alleged safety violations to the MSHA but noted that the MSHA did not find any safety violations following an inspection.

¶ 4      A claims adjudicator determined that the plaintiff was ineligible for unemployment benefits, pursuant to section 601(A) of the Act (820 ILCS 405/601(A) (West 2010)). The claims adjudicator stated: "Since the employer was aware of the conditions and had the ability to control the conditions or acts, the claimant's reason for leaving is attributable to the

---

[1]A texter is a device used to send text messages to and from the mine, and a spotter is a device that tests for methane.

employer. However, because the conditions or acts were not serious violations of the original hiring agreement or did not create a substantially less favorable work situation, the claimant left work voluntarily without good cause attributable to the employer." The plaintiff appealed the decision of the claims adjudicator to the IDES.

¶ 5 On June 13, 2012, a referee with the IDES held a telephone hearing. Admitted into evidence was the plaintiff's appeal letter as well as a federal Department of Labor publication titled "Miners' Rights." The plaintiff, who was represented by counsel, testified that he had been a laborer in the coal mine with Big Buck for a little over a year. He testified that he did not give advanced notice when he quit his job and informed the owner of Big Buck, Jim Suits, that he was quitting due to his safety concerns. The plaintiff testified that he had shared his concerns with Suits and others at Big Buck at least six or seven times, and that he had been asked to go down into the mines without a spotter or properly functioning texter about six or seven times. The last time that he was asked to go into the mine without the proper safety equipment, he waited until a week afterwards and then quit his job and reported his concerns to the MSHA. When asked why he did not report his concerns to the MSHA sooner, the plaintiff responded that he did not want to lose his job for reporting the issues. The plaintiff acknowledged that the Coal Mining Act (225 ILCS 705/1.01 to 39.1 (West 2010)) provided that an employee could not be discharged for reporting safety violations, and any reporting would remain confidential. However, he believed that someone at Big Buck would find out that he reported his safety concerns because that was "the way mines work." He stated that the first time he was asked to go into the mine without the proper safety equipment was about six or seven months before he left Big Buck.

¶ 6 When questioned by his attorney, the plaintiff stated that both the texter and the spotter were required by law. He stated that he had an associate's degree in coal mining technology and part of the curriculum was mining law, so he knew that the texter and spotter were required in the coal mines. He also testified that he shared his safety concerns with other members of the crew and Roger Thomas, the mine contractor.

¶ 7 Jim Suits, the owner of Big Buck, testified that he remembered the plaintiff telling him about the broken texter on one specific occasion. Suits testified that the particular texter in question would run out of battery power every few hours and the batteries would have to be replaced. That particular texter was only to be used in emergency situations for short periods of time. He stated that the plaintiff should have never gone into the mine without a working texter and spotter, and that he could not fire an employee if he refused to go into the mine because he did not have a texter and spotter. He testified that a miner should not go down into the mine without a texter and spotter, and that the miner has a right to refuse to go into the mine if he feels conditions are unsafe. Suits further testified that there were multiple texters and spotters that the plaintiff could have used instead of the broken texter. Suits then testified that after the plaintiff reported to the MSHA, the MSHA conducted an investigation of the mine and tested all of the equipment. Suits stated that he was not cited for anything as a result of the inspection.

¶ 8 When questioned by the plaintiff's counsel, Suits admitted that he did not ask specifically why the plaintiff was quitting his job, just that he knew that the reason he was quitting related to safety concerns. He reiterated that he would not have asked the plaintiff or any

other crew member to go down into the mines without the proper safety equipment.

¶ 9 In a decision dated June 14, 2012, the referee affirmed the decision of the claims adjudicator and concluded that the plaintiff failed to establish, by a preponderance of competent evidence, that he was required to work in unsafe conditions. As such, the referee determined that the plaintiff voluntarily left work without good cause attributable to the employer and that he was thus ineligible to receive unemployment benefits. The plaintiff then appealed to the Board, arguing that he was required to go into the mine without the proper equipment and could not refuse to go down into the mine.

¶ 10 In a decision dated August 22, 2012, the Board affirmed the decision of the referee, finding that the record adequately set forth the evidence so that no further evidentiary proceedings were deemed necessary. The Board found that the plaintiff voluntarily left his job because he believed that the texter was not working properly, but that the plaintiff had the "permissible option of refusing to go down into the mine with a non-functioning texter" and that "the claimant's safety did not hinge on quitting the job altogether." The plaintiff appealed the decision of the Board to the circuit court of Saline County.

¶ 11 In an order dated January 18, 2013, the circuit court affirmed the decision of the Board. In its order, the circuit court found that the decision of the Board was not clearly erroneous. From that order, the plaintiff appeals.

¶ 12                                                    ANALYSIS

¶ 13 On appeal, the plaintiff argues that the circuit court erred when it affirmed the decision of the Board because the evidence showed that he was eligible for unemployment benefits, that he should have been able to have a witness at the telephone hearing, read a statement from his witness, and enter the MSHA investigation report into evidence, and that Big Buck never contested his receiving unemployment benefits.

¶ 14 On appeal from the circuit court, we review the findings of the Board, not the referee or circuit court. *Abbott Industries, Inc. v. Department of Employment Security*, 2011 IL App (2d) 100610, ¶ 15. Whether an employee left his place of employment without good cause attributable to his employer is a mixed question of law and fact, which we will only reverse if it was clearly erroneous. *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 942 (2010). The decision by the Board is clearly erroneous when a review of the record leaves the reviewing court with a definite and firm conviction that a mistake has been made. *Id.* at 942-43.

¶ 15 The Act states that an individual shall be ineligible for benefits if he or she has left work voluntarily without good cause attributable to the employing unit. 820 ILCS 405/601(A) (West 2010). "Good cause" results from circumstances that produce pressure to terminate employment that is both real and substantial and that would compel a reasonable person under the circumstances to act in the same manner. *Collier v. Department of Employment Security*, 157 Ill. App. 3d 988, 992 (1987). When analyzing whether an employee left his position for good cause attributable to the employer, the focus is on the conduct of the employer. *Pearson v. Board of Review of the Department of Employment Security*, 194 Ill. App. 3d 1064, 1069 (1990). However, the employee must make a reasonable effort to resolve

-4-

the cause of his or her leaving, when such effort is possible. 56 Ill. Adm. Code 2840.101(b) (2010); see *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶¶ 39-40. Situations where an employee's departure is attributable to the employer include scenarios where the employer has implemented a substantial change in the conditions of employment. 56 Ill. Adm. Code 2840.101(c) (2010).

¶ 16 Focusing on Big Buck's actions, after the plaintiff complained to Suits on one specific occasion about a malfunctioning texter, Suits determined what the problem with the texter was and informed the plaintiff that the texter needed to have the batteries changed every few hours in order to function. Suits also stated that that particular texter was to be used only in emergency situations, and that there were other texters that the plaintiff could have used. Suits further testified, and the Miners' Rights publication verified, that Suits could not force an employee to go into the mine without proper safety equipment, nor could an employee be discharged for refusing to go into the mine without the proper safety equipment. Further, the MSHA inspection revealed no violations. Even with one broken texter, Suits testified that there were other texters available for the miners to use. Thus, we see no substantial change in the plaintiff's employment that would warrant his leaving for good cause.

¶ 17 With respect to the plaintiff's actions, Suits testified that the plaintiff could refuse to go down into the mine if he felt conditions were unsafe or if he did not have the proper safety equipment. Suits also testified that he could not fire anyone for refusing to go down into the mine for those reasons. However, the plaintiff never refused to go into the mine. While the plaintiff argues that he believed he would be fired if he refused to go into the mine without the proper equipment, the Miners' Rights publication as well as the MSHA, about which the plaintiff testified to have learned while obtaining his associate's degree, contradict the plaintiff. Further, the plaintiff did not report the alleged violations until *after* he quit. The plaintiff had reasonable options, other than quitting, to resolve the issues about which he was concerned. The Board could have easily found that a reasonable person would have taken advantage of the rights under the MSHA and the Miners' Rights publication before quitting the job. Thus, the Board's determination was not clearly erroneous.

¶ 18 Next, plaintiff argues that the Board should have allowed him to have a witness at the hearing, read a statement from the witness, and enter the report from the MSHA investigation into evidence. Issues not raised before the administrative agency are deemed waived on administrative review. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 328 (2009). Here, the plaintiff informed the referee that he had a witness, but when the referee called the witness, the witness did not answer. Neither the plaintiff nor his attorney asked that the hearing be delayed so that the witness could be reached. Nor did the plaintiff argue, at the hearing, that the MSHA investigation report should have been submitted and included in the record. The plaintiff did not properly offer the MSHA report as evidence. The plaintiff was provided with information, titled "Preparing for Your Appeal Hearing," about the administrative appeal hearing and what procedures he would need to follow in order to present witnesses and evidence. Thus, the Board did not err when it did not consider evidence and a witness statement that were not properly admitted to the administrative agency.

¶ 19 Finally, the plaintiff argues that he should not have been denied benefits because Big

Buck never contested his filing for unemployment benefits. This is only partially true. Big Buck, through Jim Suits, contested the plaintiff's allegations regarding the plaintiff's reasons for quitting and argued that the plaintiff did not have good cause attributable to Big Buck. The decision to deny benefits is that of the administrative agency, not the employer. 820 ILCS 405/701, 702 (West 2010). Therefore, the Board's determination that the plaintiff was ineligible for benefits even though Big Buck did not formerly contest the plaintiff's application was not clearly erroneous.

¶ 20                                    CONCLUSION

¶ 21        For the foregoing reasons, the judgment of the circuit court of Saline County is affirmed.

¶ 22        Affirmed.