2021 IL App (1st) 191965-U

No. 1-19-1965

Order filed February 16, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JEFFREY J. STEVENS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 19 L 50383 |
| DEPARTMENT OF EMPLOYMENT SECURITY, | ) | |
| DIRECTOR OF EMPLOYMENT SECURITY; BOARD | ) | |
| OF REVIEW; and EDWARD D. JONES & COMPANY | ) | |
| C/O EQUIFAX (TALX UCM SERVICES), | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Board of Review's decision upholding the denial of plaintiff's unemployment benefits is affirmed where the record supported a finding that plaintiff voluntarily left employment without good cause attributable to the employer.

¶ 2    Plaintiff Jeffrey J. Stevens appeals *pro se* from the circuit court's order affirming a decision of the Board of Review (Board) of the Department of Employment Security (Department). The

Board's decision affirmed a referee's dismissal of plaintiff's appeal from a claims adjudicator's denial of unemployment benefits. On appeal, plaintiff argues that the Board's finding that he was not entitled to unemployment benefits because he voluntarily left work without good cause attributable to his employer, Edward D. Jones and Company (Edward Jones), was erroneous where the facts showed Edward Jones terminated him, and thus he was eligible for benefits. We affirm.

¶ 3    The record reveals that plaintiff started work at Edward Jones in October 2018, but stopped coming to work on February 4, 2019, due to a poor working relationship with his supervisor, Jeff Stonecliffe. Plaintiff communicated with Thomas Korte from Edward Jones's human resource department between February 4, 2019 and February 15, 2019, but did not return to work. Korte then discharged plaintiff over the phone on February 15, 2019.

¶ 4    On February 20, 2019, plaintiff filed a claim for unemployment benefits with the Department. The application listed the reason for separation as "Discharged (Fired)" by Edward Jones. In plaintiff's application, he stated that Korte discharged him on February 15, 2019, after plaintiff complained about Stonecliffe's "belittling and condescending" manner. As the reason for discharge, plaintiff stated that Korte "explained *** that Edward Jones felt that it wasn't a good fit."

¶ 5    On March 4, 2019, Edward Jones filed a response contending that plaintiff "voluntarily quit without notice" and said he "just couldn't work here anymore." In a fax dated March 5, 2019, Christopher Sans Souci, an unemployment insurance consultant, stated on behalf of Edward Jones that Korte did not discharge plaintiff and "was trying to coach" plaintiff and Stonecliffe on how to "improve the relationship."

¶ 6    On March 7, 2019, a Department claims adjudicator denied plaintiff's claim. The claims adjudicator based the decision on the parties' written submissions because the parties did not respond to her attempts to contact them by telephone. In the determination, the claims adjudicator stated that though Edward Jones had the ability to control the conditions at issue, plaintiff did not exhaust his options for resolving the situation, and therefore left voluntarily without good cause attributable to Edward Jones.

¶ 7    On March 11, 2019, plaintiff appealed from the claims adjudicator's denial. Plaintiff attached materials to the appeal, including emails and a physician's note.

¶ 8    In an email to Greg Klaus of Edward Jones's human resources department, dated February 5, 2019, plaintiff stated that working with Stonecliffe had become "unbearable." Plaintiff asked for help to "rectify the situation" and relayed that he told Stonecliffe he would not return to work until he discussed "things with the appropriate person." In response, Klaus wrote to plaintiff that he forwarded the email to Korte.

¶ 9    In an email to Korte dated February 8, 2019, plaintiff listed "concerns" regarding Stonecliffe's "belittling" and "condescending" behavior, including Stonecliffe becoming "extremely frustrated" when plaintiff asked for help. Plaintiff cited "several" instances of belittling or condescending behavior. Plaintiff stated that he needed time away to address his excessive stress, and that Korte informed plaintiff that he could take personal leave using sick days and vacation days if Stonecliffe approved.

¶ 10    In an email to Korte dated February 11, 2019, plaintiff relayed that he spoke with "HR" regarding leave and was told medical leave was unavailable. Plaintiff acknowledged that he could

use personal leave with Stonecliffe's approval, but thought it was "unreasonable" for him to use "vacation/sick time given the circumstances."

¶ 11    Plaintiff emailed Korte on February 12, 2019, and attached a note from Dr. Peter Jurgen Kiefer from that day. Dr. Kiefer opined that plaintiff "should remain out of work until the hostile work environment is addressed and improved" because he had "excessive stress" due to "being belittled and condescended to on a daily basis."

¶ 12    On March 27, 2019, a Department referee held a telephone hearing on plaintiff's appeal. Plaintiff and two representatives from Edward Jones, including Korte, appeared.

¶ 13    In response to questioning from the referee, plaintiff stated that he notified Edward Jones when he did not come to work on February 5, 6, and 7, 2019. He also did not go to work on February 8. Korte asked him to come in and work through the issues, but plaintiff said he did not feel well enough. Plaintiff also did not go to work or call anyone at Edward Jones on February 9 because he was waiting for Korte to reply. He again did not return to work on February 11, then went to the doctor on February 12. Prior to February 12, no doctor advised him to leave work. He did not intend to quit. No one from Edward Jones told plaintiff there was no leave available on February 7 or 8, and he learned there was no leave available during the February 15 conversation in which Korte terminated him.

¶ 14    The referee asked plaintiff to describe Stonecliffe's behavior. Plaintiff replied that Stonecliffe assigned "too much work" that he expected to be "done too fast," and had "condescending and belittling outbursts" on a "regular basis." Plaintiff described a specific incident where Stonecliffe "rush[ed] through" showing plaintiff how to set up "calendar reminders." When plaintiff asked to see something again, Stonecliffe started explaining "the basics

of online banking" even though Stonecliffe knew plaintiff had worked in banking and mortgage for 25 years. According to plaintiff, the stress he experienced from dealing with Stonecliffe was the only reason he stopped going to work. He was awaiting Korte's response when Korte fired him.

¶ 15    Korte also responded to questioning from the referee. The first time Korte spoke to plaintiff after February 4, 2015, was on February 7, when plaintiff explained that he was "very stressed out" due to "being belittled" by Stonecliffe during "periods of sudden condescending outbursts." Plaintiff did not say when he would return to work, but did say he planned on going to the doctor and wanted voluntary leave. Korte and plaintiff next spoke on February 8, where plaintiff repeated his concerns and said he wanted 30 days of leave. Korte said he would reach out to plaintiff with "a decision on the next steps," but that plaintiff needed to come back to the branch to "work through" his concerns. Plaintiff refused, and also did not return to work from February 11 through February 15. Edward Jones did not give plaintiff a written warning before February 15. Continuing work was available had plaintiff returned.

¶ 16    The referee asked whether plaintiff been "discharged" or "resign[ed]?" Korte responded, "He was discharged." The discharge occurred in a phone call on February 15, 2019, between Korte and plaintiff. During that call, Korte told plaintiff there was "no leave available in his situation," the position was "not a good fit for him," and Edward Jones was "moving forward with separation." Korte initially stated that he did not think plaintiff had any remaining sick or vacation time as of February 15, 2019, but later corrected himself and stated that plaintiff had "some" vacation time remaining, though Korte was unsure how many days remained.

¶ 17    On March 28, 2019, the referee affirmed the claims adjudicator's denial. She concluded that the evidence did not show that plaintiff left work for good cause attributable to the employer, and was therefore ineligible for unemployment benefits. She found that plaintiff resigned when he stopped reporting to work without leave available, and that plaintiff failed to show "specific examples" of the supervisor's conduct that would cause "a reasonable person to leave his job." The referee further found that plaintiff "did not take all steps to alleviate his complaints."

¶ 18    On March 31, 2019, plaintiff appealed to the Board and attached the same materials, along with a letter describing his arguments. Plaintiff also attached text message exchanges purportedly between himself and Stonecliffe, dated February 5, 2019, in which plaintiff stated he was using a sick day because he was "too stressed out."

¶ 19    On June 7, 2019, the Board affirmed the referee's decision. The Board found that plaintiff believed Stonecliffe "became condescending," but Edward Jones "took action to remedy the situation." Stonecliffe "continued to issue business directives." Plaintiff did not feel that Stonecliffe "accounted" for his concerns, then "stated" he would miss work because he was "ill with stress." Plaintiff wanted 30 days of leave without exhausting his paid sick time, but Edward Jones's policy did not permit this. After a two-week absence, Edward Jones terminated plaintiff "because he had no leave available." Plaintiff submitted a note from a doctor one week into his absence that stated he "experienced stress" due to the work environment, but it did not contain a "medical diagnosis."

¶ 20    The Board concluded that plaintiff did not establish that Stonecliffe subjected him to "abuse or hostility." Instead, the evidence showed that Stonecliffe was "motivated by business need," and that Edwards Jones took steps to resolve the issue between plaintiff and Stonecliffe.

The Board agreed with the referee that a reasonable person would not feel compelled to leave his job based on the conditions plaintiff described, and instead would attempt to "work through the issues." The Board also found that the medical evidence plaintiff submitted did not justify a two-week absence, and thus plaintiff was ineligible for the statutory medical exception.

¶ 21   On July 2, 2019, plaintiff filed a *pro se* complaint with the circuit court appealing the Board's decision. On September 25, 2019, the circuit court affirmed.

¶ 22   On appeal, plaintiff claims the Board erred in finding he was ineligible for unemployment benefits because the facts demonstrate that Edward Jones terminated him, and he never voluntarily left employment.[1]

¶ 23   In an appeal from the denial of unemployment benefits, this court reviews the Board's decision, not that of the circuit court. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 31. The Board here found that plaintiff voluntarily left employment without good cause attributable to the employer. Because this decision involves a review of the Board's finding of fact that plaintiff was not terminated and a question of law as to whether plaintiff established good cause, this case presents a mixed question of law and fact. See *Horton v. Department of Employment Security*, 335 Ill. App. 3d 537, 540-41 (2002) (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001)). Mixed questions of law and fact are reviewed under the clearly erroneous standard. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395. The Board's decision may be found clearly erroneous where the reviewing court is "left with

_____

[1] Plaintiff states in his *pro se* brief that he is appealing from a grant of summary judgment, but summary judgment is not at issue based on our review of the record.

the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id.*

¶ 24    The Unemployment Insurance Act states, in relevant part, that an employee shall be "ineligible for benefits" for the week he or she left work "voluntarily without good cause attributable" to the employer and "thereafter, until he or she has become reemployed." 820 ILCS 405/601(A) (West 2018).

¶ 25    For purposes of the statute, "Good cause results from circumstances that produce pressure to terminate employment that is both real and substantial and that would compel a reasonable person under the circumstances to act [in] the same manner." *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 943 (2010). Even where an employee has good cause attributable to the employer for leaving employment, he must make reasonable efforts to resolve the issue before leaving to qualify for unemployment benefits. See *Lojek*, 2013 IL App (1st) 120679, ¶ 36.

¶ 26    A claimant may also qualify for benefits if he is "deemed physically unable to perform his or her work by a licensed and practicing physician." 820 ILCS 405/601(B)(1) (West 2018). To establish eligibility under this exception, a claimant must offer evidence that (1) health issues justified him leaving work on the date of termination, (2) he informed the employer of the health issues, and (3) he made himself available for other work that did not threaten his health. *Lojek*, 2013 IL App (1st) 120679, ¶ 42 (citing *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 812 (1991)).

¶ 27    The record shows that plaintiff left work on February 4, 2019, without preapproved leave, and did not return for two weeks, including for one week without any medical documentation.

Plaintiff resisted using sick or vacation days for the leave he requested, and refused Korte's request that plaintiff return to work to resolve the issues with Stonecliffe. Korte then terminated plaintiff in a phone call on February 15, 2019. The Board acknowledged that plaintiff initially left because he felt Stonecliffe's behavior was condescending and that Stonecliffe did not account for plaintiff's concerns, but found that Stonecliffe's behavior was not hostile or abusive, and that Edward Jones attempted to resolve the problem. In the Board's estimation, a reasonable person would not have felt compelled to leave employment due to Stonecliffe's treatment, which was "motivated by business need." Instead, the Board believed a reasonable person would have worked to resolve the issues with his or her supervisor. The Board also found that the doctor's note from February 12, 2019, did not provide a specific medical diagnosis sufficient to make plaintiff eligible for the statutory medical exception.

¶ 28     On this record, we cannot say the Board made a clear error in finding that plaintiff was not terminated, and instead voluntarily left work without good cause attributable to Edward Jones. Plaintiff argues that Korte's testimony during the telephone hearing that he "discharged" plaintiff establishes that plaintiff did not voluntarily leave employment. Korte's testimony is not conclusive of the issue, however, and the Board's findings that plaintiff's conduct amounted to voluntary leaving is supported by the record. The law requires a claimant to take all available steps to resolve issues with his employer before leaving employment. See *Lojek*, 2013 IL App (1st) 120679, ¶ 36. Here, there is no dispute that Korte asked plaintiff to return to work to resolve the issues with Stonecliffe, but plaintiff refused. This was sufficient grounds for the Board to conclude that plaintiff was not terminated, but rather voluntarily left employment without good cause attributable to his employer, and was thus ineligible for benefits. See *id.* ¶ 36; see also *Walls v. Department of*

*Employment Security*, 2013 IL App (5th) 130069, ¶ 17 (claimant was not entitled to unemployment benefits in part because he failed to exhaust available options to resolve his complaints before refusing to work).

¶ 29    Plaintiff also contends that he did not voluntarily leave employment because he maintained contact with Edward Jones during his absence and was expecting Korte to provide information regarding leave options, not discharge him. We disagree. A reasonable person in plaintiff's position should have known his unilateral decision to leave work without preapproval, followed by his continued absence and refusal to return to work for the limited purpose of resolving his issues, could be interpreted as a voluntary leaving, regardless of the employer's conduct after the employee's refusal to return. See *Hamilton v. Board of Review of Department of Labor*, 136 Ill. App. 3d 50, 52-55 (1985) (employer was entitled to view claimant's refusal to work mandatory overtime without a medical diagnosis as a voluntary leaving such that claimant was ineligible for unemployment benefits).

¶ 30    Finally, we find that the Board's conclusion that plaintiff did not provide sufficient medical evidence to qualify for the statutory exception was in accordance with law and did not constitute clear error. The February 12, 2019 physician's note did not diagnose plaintiff as "physically unable" to work due to a medical condition, which the statute requires, and plaintiff supplied no other medical evidence. See 820 ILCS 405/601(B)(1) (West 2018). Additionally, plaintiff did not show that he made himself available to take on the other work that Korte testified was available, which is also disqualifying. See *Lojek*, 2013 IL App (1st) 120679, ¶ 42.

¶ 31    In sum, the Board's decision was supported by the record, and thus did not constitute clear error. Accordingly, we affirm the judgment of the circuit court of Cook County affirming the decision of the Board.

¶ 32    Affirmed.