2026 IL App (1st) 251166-U

No. 1-25-1166

Order filed April 15, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| VICTOR STEPHEN CWAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 24 L 50658 |
| ILLINOIS DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, THE DIRECTOR OF EMPLOYMENT | ) | |
| SECURITY, THE BOARD OF REVIEW, and | ) | |
| CAPUTO'S NEW FARM PRODUCE ADDISON, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Martin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where plaintiff voluntarily left his employment without good cause attributable to his employer, the Board of Review's denial of unemployment benefits is affirmed.

¶ 2    Plaintiff Victor Stephen Cwan appeals *pro se* from an order of the circuit court of Cook County affirming a final administrative decision by defendant, the Board of Review of the Department of Employment Security (Board). The Board found that plaintiff left his employment

voluntarily without good cause attributable to his employer and, therefore, was ineligible for unemployment insurance benefits. On appeal, plaintiff contends he did not voluntarily leave his job but, instead, a hostile work environment led to his constructive discharge. Plaintiff also claims he was denied due process during multiple stages of the proceedings where the telephone hearing officer repeatedly interrupted plaintiff's testimony, plaintiff was never asked to consent to the recording of the telephone hearing, and the circuit court failed to review the record and refused to consider plaintiff's corroborating evidence. For the following reasons, we affirm.[1]

¶ 3    The record shows plaintiff was employed as a hot foods associate at Caputo's New Farm Produce (Caputo's) from June 14, 2023, until March 26, 2024. While employed at Caputo's, plaintiff was known by his former name, Victor Czubatiuk, which is used throughout the record. On March 31, 2024, plaintiff applied to the Department of Employment Security (Department) for unemployment insurance benefits. Plaintiff reported his reason for separation was that he quit. Consequently, the Department asked plaintiff to complete a Voluntary Leave Questionnaire.

¶ 4    On the questionnaire, plaintiff stated his reason for leaving as follows:

"Constant interference with management about kitchen operations[.] On the week of March 10, 2024, Sergio (store manager) took it upon himself to take the expired food off my shelves and put it in a different cooler and not tell me. Chef Gene, executive chef, asked about the food on 03-12-2024. I said I do not know, and Chef Gene would talk [to] the store director. [O]n 03/20/2024, I was informed by Chef Gene if it happens again, I would be written up[.] He claims it was two warning[s.] I did not even know I had two

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

warning[s] all ready[.] Chef Gene automatically blamed me for the mishap and did not even ask any questions. He written it off as I was having an off day. Another employee by the name of *** kept blaming me for everything because he would not do his job."

¶ 5 Plaintiff further stated that on March 20, 2024, he informed the store's director, Eric Albrecht, that he was leaving his employment because he had previously complained to human resources about Sergio's behavior and thereafter was subject to retaliation. Plaintiff stated that Caputo's policy prohibited store managers from interfering with the departments except for a disciplinary or budget issue. Plaintiff claimed the recent incident violated his original hiring agreement. Plaintiff also stated that his employer did not ask him why he was leaving but he gave a reason to Chef Ruben in a text message the next day and later discussed it with Ruben.

¶ 6 Plaintiff stated that he did not take any steps to explain or resolve the situation before leaving. He claimed he had no choice to remain employed at Caputo's. Plaintiff gave Caputo's a "notice period" by signing a piece of paper that stated his last day, and he completed that period prior to leaving.

¶ 7 Caputo's submitted a written protest to plaintiff's claim for benefits asserting that plaintiff voluntarily quit his job for personal reasons. Caputo's stated that on March 20, 2024, plaintiff told the store director that he was resigning effective March 26. When asked why he was resigning, plaintiff did not provide any specific details and stated that the store had too many managers. Continuing work was available, there had been no change in plaintiff's hiring agreement, and plaintiff did not take any actions to avoid quitting.

¶ 8 A Department claims adjudicator conducted an initial telephone interview with plaintiff to assess his eligibility for benefits. During the interview, plaintiff stated that he left his employment

at Caputo's because the store manager, Sergio, was interfering with kitchen procedures. Plaintiff again described the incident in which expired food was moved from a shelf to a cooler without his knowledge and he was blamed for it. This was an ongoing problem. Following the incident, plaintiff submitted his notice to Caputo's. Plaintiff added that Sergio had repeatedly changed plaintiff's work schedule without telling him.

¶ 9 Plaintiff stated that he tried to resolve the situation before leaving and had complained several times about acts that violated the store's policies. Plaintiff stated, "[t]hey didn't want me working there." When plaintiff asked Albrecht for a resignation form, Albrecht did not ask plaintiff why he was leaving, and plaintiff did not provide a reason.

¶ 10 The claims adjudicator also interviewed a representative for Caputo's who stated that the employer was not aware of any incident or problem that caused plaintiff to leave his job. Plaintiff submitted a written resignation but did not provide specific details about why he was leaving. The representative claimed plaintiff had stated that there were too many managers at the store. Plaintiff could have continued his employment at Caputo's.

¶ 11 On April 22, 2024, the claims adjudicator issued a written determination finding plaintiff voluntarily left his employment at Caputo's due to "job dissatisfaction." The adjudicator found that plaintiff's reason for leaving was attributable to his employer because Caputo's was aware of the conditions and could control them. However, the adjudicator found plaintiff had failed to exhaust reasonable alternatives to correct the situation and, therefore, left work voluntarily without good cause attributable to his employer. Consequently, the adjudicator concluded that plaintiff was ineligible for unemployment insurance benefits under section 601(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (West 2024)).

¶ 12    Plaintiff filed a written request for reconsideration of the claims adjudicator's decision and an appeal to the Department referee. Plaintiff disagreed with the adjudicator's finding that he failed to make any effort to correct the situation prior to leaving. Plaintiff maintained that management interfered with kitchen operations and that there was a "severe lack of communication" among the managers which created a confusing and hostile workplace. Plaintiff described multiple complaints he made to management and claimed no one resolved the problems. The human resources director told plaintiff that his complaints were based on his own perception. Other managers told him to mind his own business and concentrate on his job. Plaintiff claimed management implied that he should not bother them again.

¶ 13    Plaintiff further stated that he quit his job because, for eight days, the store director, a store manager, and a chef withheld information from him and blamed him for the expired food. The resignation form only asked for his last date of employment. No one asked why he was leaving.

¶ 14    In addition, plaintiff claimed that during the initial telephone interview, the claims adjudicator never asked him about "any complaint procedures." Plaintiff claimed the adjudicator "was not experienced and or trained" and was either "the greatest actor or was easily manipulated."

¶ 15    After reconsideration, the claims adjudicator again concluded, based on the original findings and reasoning, that plaintiff was ineligible to receive benefits. Plaintiff's appeal was then filed with the Department referee for a telephone hearing.

¶ 16    On May 21, 2024, the Department sent plaintiff notice of the date and time for his telephone hearing. The notice advised plaintiff to read the publication "Preparing for Your Appeal Hearing" which was posted on the Department's website with paper copies available by request. The record contains a copy of the publication. In the section describing what happens at the hearing, the

publication expressly states, "The Referee will make a recording of the hearing to preserve a record of the testimony." The section further explains that orderly hearings benefit both parties and that "[t]he Referee cannot permit interruptions." In addition, the publication advises, "Testify only when it is your turn. Do not interrupt others. You will have the opportunity to speak and ask questions." Finally, the publication states that a party may request a transcript of the hearing if the party files a subsequent appeal to the Board and, "[o]therwise, records of hearings are confidential and not provided."

¶ 17    On June 13, 2024, administrative law judge Thomas Cosgrove conducted the telephone hearing for plaintiff's appeal. At the start, Cosgrove advised the participants that the hearing was "being recorded in order to create a record."

¶ 18    Caputo's director of human resources, Lisa DiCostanzo, testified that plaintiff had been employed full time and left his job voluntarily. Plaintiff was not facing discipline or discharge when he left, and work was available for him had he stayed. On three prior occasions, plaintiff contacted DiCostanzo regarding situations with his job, and those issues were addressed. He did not contact DiCostanzo following the last incident.

¶ 19    DiCostanzo testified about the three prior situations. In the first incident, plaintiff was suspended for improperly speaking to a customer and was insubordinate with a store manager. Plaintiff admitted to DiCostanzo that he had been wrong and asked to change his availability and be transferred to another store. DiCostanzo accommodated both requests. In the second incident, plaintiff had sent DiCostanzo multiple emails raising numerous complaints about his coworkers and questioning Caputo's policies compared to those of Walmart. DiCostanzo, Albrecht, and another executive met with plaintiff to discuss his concerns and encouraged him to focus on his

own work. Plaintiff agreed and later sent her an email stating that everything was better and thanking her for her help. In the third incident, plaintiff emailed DiCostanzo about scheduling issues. Albrecht and plaintiff's supervisor, Chef Gene, spoke with plaintiff and adjusted his schedule. On redirect examination, DiCostanzo testified that she was not aware of plaintiff's schedule being changed without his knowledge.

¶ 20    Store director Eric Albrecht testified at the hearing that plaintiff entered his office and stated that he was resigning. Albrecht asked plaintiff, "what's going on, is there something I could help you with?" Albrecht testified that plaintiff stated, "it's nothing you guys did there's just too many managers around here." Albrecht again asked plaintiff why he was suddenly resigning. Plaintiff replied, "just give me the paper." Albrecht handed plaintiff a resignation form and plaintiff wrote that his last day would be March 26. Albrecht testified that he had granted all of plaintiff's prior requests for accommodations, including days off and adjusted starting times.

¶ 21    Plaintiff testified that he left his employment "because they set me up." When asked to elaborate, plaintiff replied, "it was out of retaliation. They know about it." Plaintiff testified about the incident when expired food was moved to a cooler without his knowledge. Eight days later, plaintiff's boss, Chef Gene, told plaintiff he was giving him a second warning about the expired food and that the next time it happened he would be "written up." Plaintiff then went to Albrecht's office and submitted his resignation. Albrecht did not ask him why he was leaving. The resignation form did not have a place to indicate a reason for leaving. Plaintiff subsequently told Chef Ruben his reason for leaving.

¶ 22    Cosgrove asked plaintiff why he left. Plaintiff testified,

"It was too many managers…too many managers were interfering with the department. Because when there was…when they were changing my schedule without authorization, that also came up in that meeting too, in that meeting. And it wasn't with Chef Gene, it was with Chef Ruben. *** And we came to an agreement that they're not supposed to interfere with other departments, especially when it comes to scheduling. And there was another problem with another employee *** who thought that he was a manager or something and he was just horrible to work with. I made numerous complaints about him, but they refused to fire him."

¶ 23    Plaintiff maintained that he was subjected to "retaliation" and that "[t]hey just did not want me to work there." Plaintiff further stated that he was two months away from receiving a pay raise and health insurance and commented that "the store was struggling with money."

¶ 24    Caputo's representative, Amina Jaffer, asked plaintiff if he discussed his concerns with his direct supervisor. Plaintiff replied, "[h]e already knew about my concerns. He just chose not to talk to me." While Jaffer was asking another question, plaintiff interrupted her and told her not to put words in his mouth. Cosgrove advised plaintiff not to interrupt people when they were speaking. Jaffer then asked plaintiff if he had told Albrecht exactly why he was "unhappy" working at Caputo's. Plaintiff replied, "I told him why I was leaving. I didn't say anything about being unhappy. I said I wanted to keep my job, but it's unfortunate people don't want me to work here anymore. That's what I said."

¶ 25    Jaffer asked plaintiff if he gave Albrecht an opportunity to resolve his concerns. Plaintiff replied, "we tried this. How many times do I have to complain about my job for them to leave me

alone?" Plaintiff further asserted that DiCostanzo "didn't want to be bothered." Plaintiff denied that his issues were resolved at the prior meeting with DiCostanzo, Albrecht, and Caputo's president. Plaintiff acknowledged that he thanked DiCostanzo after that meeting. He did not tell DiCostanzo that his issues were not resolved because "everything was fine that week." Plaintiff again interrupted Jaffer while she was speaking and Cosgrove advised him not to do so. Plaintiff testified that he did not try to contact Caputo's president with his concerns because he did not know how to reach him. He did not ask anyone for the contact information because "[t]hey don't like to be bothered."

¶ 26    The following day, Cosgrove issued his written decision affirming the claims adjudicator's finding that plaintiff was not eligible for unemployment benefits. In his factual findings, Cosgrove stated that plaintiff encountered situations and co-workers who "irritated" him. On a few occasions, when a supervisor corrected plaintiff's work or behavior, plaintiff felt his employer was "picking on him and trying to set him up." Cosgrove noted plaintiff had requested accommodations with his schedule and work location. Cosgrove found that plaintiff's schedule was changed but his "work location" was not. Cosgrove stated that plaintiff "spoke with his manager and was told that the employer was working on it." Cosgrove found that plaintiff "became frustrated and resigned" stating that there were too many managers.

¶ 27    Based on the evidence, Cosgrove found that plaintiff was not satisfied with the way he was being treated and felt his employer was "out to get him." Cosgrove stated that, although plaintiff's "request for accommodations was partially granted, his frustration over the failure of the employer to transfer him led to his voluntary leaving." Cosgrove concluded that plaintiff voluntarily

terminated his employment without good cause attributable to his employer. Consequently, under section 601(A) of the Act, plaintiff was disqualified from receiving unemployment benefits.

¶ 28    Plaintiff appealed Cosgrove's decision to the Board. Plaintiff alleged that the "main reason" Cosgrove ruled against him was because plaintiff had interrupted Jaffer twice, resulting in a biased decision. Plaintiff quoted Cosgrove's finding that he resigned because there were too many managers and agreed that finding was "[t]rue." Plaintiff stated, "too many manager[s] cause a hostile workplace." Plaintiff asserted that company policy prohibited managers from interfering with other departments unless there was a disciplinary or budget issue. Plaintiff maintained that he had been "set up."

¶ 29    Plaintiff attached what he asserted were text messages he sent to Chef Ruben on March 21, 2024, but the images are illegible.

¶ 30    The Board issued a notice that it received plaintiff's appeal on June 25, 2024, and would issue its final determination within 120 days.

¶ 31    On June 27, 2024, plaintiff requested copies of the telephone hearing transcript and audio recording so he could file a complaint with the "General Inspector vs Judge From Hearing." On July 1, 2024, plaintiff submitted a second request for the telephone hearing transcript. Plaintiff stated that he wanted to file a complaint with the Judicial Inquiry Board and the Office of the Executive Inspector General against Cosgrove for using hearsay and falsifying facts in rendering his decision. Plaintiff also stated that he was filing a complaint with the Attorney Registration and Disciplinary Commission against Jaffer and one of her colleagues for unethical conduct and for "filing HEARSAY." Plaintiff stated that he was forced to leave his job. He further stated that his resignation on March 20 was recorded on camera.

¶ 32 On August 21, 2024, plaintiff submitted a letter to the Board stating that there was a new development in his case as Caputo's was unable to locate a copy of his resignation letter. Plaintiff repeated that he left because management interfered with the kitchen's standard operating procedures, and there was a lack of communication among the managers, which created a hostile workplace. Plaintiff stated that he previously raised complaints with Caputo's about co-workers and management, but nothing was done to resolve the issues. Plaintiff claimed that on February 6, 2024, DiCostanzo told him not to bother her anymore. Plaintiff maintained that no one at Caputo's asked him why he was leaving.

¶ 33 Plaintiff further stated that he believed Cosgrove was friends with DiCostanzo and Jaffer. Plaintiff asserted that Jaffer was erroneously allowed to include hearsay in Caputo's written protest. He also argued that he was "railroaded" and that DiCostanzo misled Cosgrove twice. Plaintiff stated that Cosgrove did not ask for closing statements and, instead, ended the telephone hearing with a patronizing statement. He also claimed Cosgrove was angry with him because he interrupted Jaffer, who was Cosgrove's "friend," during the hearing, and he believed Cosgrove made his determination before the hearing began. Plaintiff maintained that he did not want to leave his job but was "set-up and forced to leave."

¶ 34 Plaintiff included with his letter the two screenshots of text messages he sent to Chef Ruben on March 21, 2024. Therein, plaintiff told Ruben that the "main reason" he was leaving his job was due to "the current store policy about expired foods." Plaintiff disagreed with the timing of when expired food was removed from the store's shelves. He also stated that he was leaving "mainly because Management interfered with the kitchen." In addition, plaintiff stated that Chef Gene asked him about expired food in the cooler. Plaintiff was told that he already had two

warnings and the next time something happened he would be written up. Plaintiff stated, "[c]learly no one wants me to work here. I'm tired of being blamed for other peoples [*sic*] incompetence."

¶ 35    Plaintiff also attached to his letter emails he sent to management complaining about co-workers and a timecard policy. He also included a series of emails he sent to DiCostanzo and other Caputo's employees dated March 5, 2024, stating that he submitted notice that his last day would be March 12. Plaintiff stated that Sergio went above the chef's authority and changed plaintiff's schedule three times. Plaintiff stated that when he complained, he was told "we don't know what happened." Plaintiff stated that if his schedule was "put back" he would stay, but if not, he would leave on March 12. About 45 minutes later, plaintiff sent the same people another email stating "they're all ready trying to replace me. They are forcing me to quit." A short time thereafter, plaintiff emailed again stating that Albrecht had fixed his schedule.

¶ 36    In addition, plaintiff attached emails he exchanged with a labor conciliator with the Illinois Department of Labor in August 2024 to facilitate review of his personnel file with Caputo's, and an email from Caputo's agreeing to the review. He also included an email he sent to Caputo's claiming his onboarding documents were forged, and an email he received from Caputo's stating that the company could not locate a copy of his resignation letter. Plaintiff also attached a letter he received from the Department of Labor dated June 27, 2024, stating that it received a payment from Caputo's related to plaintiff's wage claim complaint, and that the matter was closed.

¶ 37    The record contains statements from four employees who were present in Albrecht's office when plaintiff submitted his resignation. Andrea Jaimes stated that plaintiff came upstairs, said something about Chef Gene, stated "it's nothing any of you guys did," and said his last day would be March 26. Bakery manager Nelly Sanchez stated that plaintiff walked into the office and asked

Albrecht for a resignation letter to sign because he was quitting. Pricing manager Victoria Medina stated that plaintiff asked Albrecht for a resignation letter and stated that his last day would be March 26. Medina stated that Albrecht asked plaintiff why he was leaving and plaintiff said there were too many managers at the store. Albrecht, in his statement, stated that plaintiff entered the office and stated that he wanted to sign a resignation letter effective March 26. Albrecht stated that he asked plaintiff why he was resigning but plaintiff would not discuss specifics and simply stated that there were too many managers at the store.

¶ 38    On October 29, 2024, the Board affirmed Cosgrove's decision finding plaintiff ineligible to receive unemployment benefits. In its written decision, the Board stated that it reviewed the record, including the recording of the telephone hearing. It found that the record adequately set forth the evidence and that no further evidentiary proceedings were necessary.

¶ 39    In its factual findings, the Board found plaintiff quit his job because "he did not like 'too many managers' in the store." The Board noted that on three prior occasions, human resources assisted plaintiff with resolving his concerns and plaintiff thanked them for their help. The Board also noted that plaintiff was granted a transfer to another store as well as a change in his hours to accommodate his public transportation issues.

¶ 40    The Board further found that the last incident involved a dispute about placing food in a cooler, and the chef spoke with plaintiff about it. The Board noted that plaintiff did not contact human resources as he had done in the past and, instead, went to the manager's office and resigned. The Board found that the manager asked plaintiff what was wrong, but plaintiff did not discuss his latest complaint. Consequently, the Board found that neither the manager nor human resources could assist plaintiff due to his failure to speak with them.

¶ 41　The Board explained that an employer has a right to reprimand its employees, and a reasonable reprimand does not constitute good cause for voluntarily leaving a job. The Board found that plaintiff did not like being spoken to about food being placed in the coolers; however, it was within the chef's authority to discuss such job issues with plaintiff. Therefore, because the employer acted within its authority, plaintiff's act of leaving his job based on this incident did not constitute good cause attributable to his employer.

¶ 42　In addition, the Board stated that a person should make reasonable efforts to resolve conflicts arising from employment before voluntarily terminating that employment. The Board found that, here, when the store manager asked plaintiff why he was quitting, plaintiff did not tell him the reason.

¶ 43　Based on its findings, the Board concluded that plaintiff voluntarily left his employment at Caputo's without good cause attributable to his employer. Accordingly, plaintiff did not meet the eligibility requirements under section 601(A) of the Act and was disqualified from receiving unemployment insurance benefits.

¶ 44　Plaintiff appealed the Board's ruling to the circuit court of Cook County. On May 6, 2025, the circuit court held a hearing on the merits. On May 21, 2025, the circuit court issued a written order affirming the Board's decision denying plaintiff unemployment insurance benefits. The circuit court found that the Board's factual findings were not against the manifest weight of the evidence. The court further found that the Board's legal conclusion that plaintiff voluntarily left his employment without good cause attributable to his employer was not clearly erroneous.

¶ 45　The circuit court noted that, following the hearing, plaintiff raised an issue regarding his lack of opportunity to call a witness to testify during the hearing in support of his appeal. The court

explained that under the Administrative Review Law, the court is restricted to reviewing the issues raised in the record and is precluded from hearing any evidence that was not presented before the administrative agency. See 735 ILCS 5/3-110 (West 2024).

¶ 46    This court granted plaintiff's motion to supplement the record on appeal with a certified bystander's report of the circuit court's hearing pursuant to Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). The report states that plaintiff argued at the hearing that he repeatedly objected to Caputo's policies for expired food, and he feared being blamed for the sale of expired food. Plaintiff further argued that the human resources director should have been held accountable for each incident leading to his resignation, and that the director altered his work schedule to prompt him to resign. Plaintiff claimed the human resources director knew about his "psychiatric condition" and was aware of the harassment and abuse he endured while employed at Caputo's.

¶ 47    The bystander's report further states that plaintiff pointed out during the hearing that he was awarded backpay by the Department of Labor following his separation of employment. He also noted that he had repeatedly asked Caputo's for a copy of his resignation letter and never received it. Plaintiff requested that the court allow his witness, Robert Newman, to testify at the hearing to corroborate the facts supporting his arguments. The court declined to hear Newman's testimony, noting that it was restricted from doing so by the Administrative Review Law.

¶ 48    The report also states that an assistant attorney general argued on behalf of the State defendants that the record supported the Board's determination that plaintiff was ineligible for unemployment benefits because he voluntarily resigned. Caputo's attorney stated he had nothing to add to the State's argument. The circuit court stated that it would review the entire record in light of the parties' arguments and later issued a written order affirming the Board's decision.

¶ 49    On appeal, plaintiff raises numerous claims of error asserting that he did not voluntarily leave his job and that he was denied due process during multiple stages of the proceedings.

¶ 50    As a threshold matter, we observe that plaintiff attached several documents in an appendix to his appellate brief in support of his assertions. Many of these documents are not included in the certified record on appeal and are dated months after the Board issued its determination on October 29, 2024. These documents include (1) a chart comparing the decisions of Cosgrove, the Board, and the circuit court; (2) an affidavit from Newman dated September 3, 2025, stating his observations of the circuit court proceedings; (3) a sheriff's service affidavit dated January 31, 2025; (4) an email plaintiff sent the sheriff's office requesting a refund dated February 24, 2025; (5) an email plaintiff sent the Illinois Department of Human Rights (IDHR) dated February 3, 2025; and (6) a charge of discrimination plaintiff filed with IDHR against Caputo's dated February 24, 2025.

¶ 51    This court's administrative review is confined to the evidence that was presented before the agency, here, the Board. 735 ILCS 5/3-110 (West 2024); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 214 (2008). Therefore, we are precluded from considering the information contained in the documents attached to plaintiff's brief because the documents are not properly before this court and cannot be used to supplement the record. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1024 (2003).

¶ 52    Plaintiff first contends that he did not voluntarily leave his job but, instead, a hostile work environment led to his constructive discharge. Plaintiff claims Cosgrove, and by implication, the Board, ignored critical evidence supporting plaintiff's contention including evidence that plaintiff

was suspended without cause, the Department of Labor's award of backpay, and a disability discrimination charge plaintiff filed against Caputo's with IDHR.

¶ 53    In response, the State defendants (the Department, the Board, and the Department Director) argue that the Board's determination that plaintiff voluntarily left his job without good cause attributable to his employer was not clearly erroneous. Defendants point out that this court reviews the decision of the Board, not Cosgrove. Defendants further argue that plaintiff forfeited his contention that the Board ignored the Department of Labor's award of backpay because he failed to explain how the award was relevant to his eligibility for unemployment benefits and failed to provide any argument or legal authority to support his contention. Defendants also assert that plaintiff's discrimination claim with IDHR is not properly before this court because it is not included in the administrative record and is dated nearly a year after the Board's decision.

¶ 54    We find that plaintiff's claims that the Board ignored his evidence are forfeited. Issues and arguments that were not presented to the administrative agency are forfeited and cannot be raised for the first time before the appellate court on administrative review. 735 ILCS 5/3-110 (West 2024); *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002). This court's review is confined to the issues, arguments, and evidence that were presented before the Board. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998).

¶ 55    Here, the record shows that at no point throughout any of the proceedings did plaintiff argue or present any evidence that Caputo's had suspended him without cause. In addition, plaintiff filed his disability discrimination claim with IDHR on September 15, 2025, nearly a year after the Board issued its final determination denying him benefits. Because plaintiff's arguments and

evidence supporting them were not presented to the Board, his arguments are forfeited on appeal. *Carpetland U.S.A.*, 201 Ill. 2d at 396-97.

¶ 56    Regarding plaintiff's claim that the Board ignored his award of backpay, the record shows that, in his appeal to the Board, plaintiff submitted a letter he received from the Department of Labor stating that it received a payment from Caputo's related to plaintiff's wage complaint, and that the matter was closed. Thus, this evidence was before the Board. However, defendants correctly point out that plaintiff has not provided this court with any argument or legal authority explaining how this evidence was relevant to the Board's determination that he was ineligible for unemployment benefits.

¶ 57    Illinois Supreme Court Rule 341(h)(7) states that an argument in an appellate brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The rule further states that "[p]oints not argued are forfeited." *Id.* Plaintiff's *pro se* status does not relieve him of his duty to comply with our supreme court rules regarding the contents of his brief. *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 14.

¶ 58    Here, plaintiff merely presented a conclusory statement that the Board erred when it ignored his wage award without providing any argument or authority demonstrating why the award was relevant to the Board's finding that he voluntarily left his job without good cause attributable to his employer. An appellant cannot shift his burden of presenting a cogent argument and research onto this court. *Id.* ¶ 15. Plaintiff has therefore forfeited this argument on appeal. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 59 Forfeiture aside, it is clear plaintiff is challenging the denial of benefits by the Board, maintaining that he did not voluntarily leave his job at Caputo's but instead, that he was forced to leave.

¶ 60 This court reviews the final decision of the Board rather than that of the circuit court. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. The Board's factual findings are considered *prima facie* true and correct and will not be disturbed unless they are against the manifest weight of the evidence. *520 South Michigan Avenue Associates v. Department of Employment Security*, 404 Ill. App. 3d 304, 312 (2010). Under this standard, the Board's factual findings "must stand unless 'the opposite conclusion is clearly evident.' " *Id.* at 313 (quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998)). Where the record contains any evidence that supports the Board's factual findings, they are not against the manifest weight of the evidence and must be sustained. *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16.

¶ 61 It is the Board's responsibility to weigh the evidence, determine the credibility of the witnesses, and resolve conflicts in the testimony. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 329 (2009). Reviewing courts are precluded from reweighing the evidence, resolving conflicts in the testimony, or evaluating the credibility of the witnesses. *Woods*, 2012 IL App (1st) 101639, ¶ 16. Nor may a reviewing court substitute its judgment for that of the Board. *520 South Michigan Avenue*, 404 Ill. App. 3d at 317. If the issue on review merely involves conflicting testimony and witness credibility, the Board's determination should be sustained. *Id.* at 318.

¶ 62  Whether an employee voluntarily left work without good cause attributable to his employer is a mixed question of fact and law reviewed under the clearly erroneous standard. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 32. The Board's decision will be found clearly erroneous only where a review of the entire record leaves the reviewing court with a definite and firm conviction that a mistake has been made. *Id.* It is plaintiff's burden to prove that he meets the eligibility requirements for benefits. *Id.* ¶ 34.

¶ 63  Pursuant to section 601(A) of the Act, a person who leaves his job voluntarily and without good cause attributable to his employer is not eligible for unemployment insurance benefits. 820 ILCS 405/601(A) (West 2024); *Nykaza v. Department of Employment Security*, 364 Ill. App. 3d 624, 625 (2006). "Good cause results from circumstances that produce pressure to terminate employment that is both real and substantial and that would compel a reasonable person under the circumstances to act in the same manner." *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 943 (2010). "A voluntary leaving is not attributable to the employer unless the employee's cause for leaving is within the employer's control, which may include, but is not limited to, situations in which the employer has implemented a substantial change in the employment conditions." *Lojek*, 2013 IL App (1st) 120679, ¶ 36 (citing 56 Ill. Adm. Code 2840.101(c) (2010)). In addition, "the employee must make 'a reasonable effort to resolve the cause' of his leaving 'when such effort is possible.' " *Id.* (quoting 56 Ill. Adm. Code 2840.101(b) (2010)).

¶ 64  Here, the record reveals that the Board's factual findings were not against the manifest weight of the evidence. The Board's finding that plaintiff quit his job at Caputo's because "he did not like 'too many managers' in the store" was based on plaintiff's own testimony at the telephone

hearing as well as other evidence in the record. When Cosgrove asked plaintiff for the reason why he left his job, plaintiff testified, "[i]t was too many managers *** too many managers were interfering with the department." In his appeal to the Board, plaintiff quoted Cosgrove's finding that he resigned because there were too many managers and agreed that finding was "[t]rue." Plaintiff further stated, "too many manager[s] cause a hostile workplace."

¶ 65    The record shows that plaintiff repeatedly stated throughout the proceedings that he left his job because management interfered with the kitchen's operating procedures. He also repeatedly alleged that a severe lack of communication among the managers created a confusing and hostile workplace. In addition to plaintiff's testimony, Albrecht also testified that when he asked plaintiff why he was resigning, plaintiff stated, "it's nothing you guys did there's just too many managers around here." In addition, Medina, a manager who was present when plaintiff resigned, stated in a written statement that Albrecht asked plaintiff why he was leaving and plaintiff said there were too many managers at the store.

¶ 66    The evidence also supported the Board's factual finding that the final incident that led to plaintiff's resignation was the dispute about expired food being moved to a cooler, and that a chef had addressed the issue with plaintiff. Testimony from the telephone hearing showed that when plaintiff had prior concerns, he raised those issues with human resources and his concerns were resolved. The testimony also showed, however, that following the final incident, rather than discussing his complaint with Albrecht or DiCostanzo, plaintiff resigned. Plaintiff testified that he had previously raised concerns, questioned "[h]ow many times do I have to complain about my job," and claimed DiCostanzo "didn't want to be bothered." Thus, the Board's finding that neither Albrecht nor DiCostanzo could assist plaintiff because he failed to speak with them was based on

the evidence. It therefore follows that the Board's finding that plaintiff failed to make reasonable efforts to resolve the conflict before voluntarily terminating his employment was proper.

¶ 67    The record further reveals that the Board's conclusion that plaintiff voluntarily left his job at Caputo's without good cause attributable to his employer was not clearly erroneous. The evidence supported the Board's finding that plaintiff took issue when the chef addressed him about the expired food in the cooler. Plaintiff repeatedly stated that he was being blamed for something he did not do. The Board correctly noted, however, that an employer has a right to reprimand its employees and that a reasonable reprimand does not constitute good cause for voluntarily leaving a job. The Board correctly found that, as plaintiff's supervisor, it was within the chef's authority to discuss job issues with plaintiff. Therefore, the Board properly concluded that, because the employer acted within its authority, plaintiff's act of leaving his job based on this incident did not constitute good cause attributable to his employer. Accordingly, the Board's determination that plaintiff was not eligible to receive unemployment benefits was not clearly erroneous. *Lojek*, 2013 IL App (1st) 120679, ¶ 32.

¶ 68    In reaching our conclusion, we find no merit in plaintiff's numerous claims that Cosgrove and the Board violated *People v. Clark*, 406 Ill. App. 3d 622 (2010), and deprived him of due process. A due process violation will be found only where it is established that prejudice occurred in the proceedings. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 825 (2009). Plaintiff asserts that Cosgrove was not a neutral arbiter but, instead, instigated a confrontation by interrupting his testimony and reprimanding him. Plaintiff's claim is belied by the record which shows that Cosgrove only stopped plaintiff from speaking when plaintiff twice interrupted Jaffer. On those two occasions, Cosgrove advised plaintiff not to interrupt people when

they were speaking. There were no other reprimands and no confrontation. The hearing transcript further shows that Cosgrove gave plaintiff ample opportunity to present his arguments and evidence.

¶ 69    Plaintiff erroneously asserts that *Clark* held that the exclusion of testimony is reversible error. *Clark* is a narcotics case in which the defendant raised claims of insufficient evidence, a due process violation for being handcuffed during a bench trial, and ineffective assistance of counsel during plea negotiations. *Clark*, 406 Ill. App. 3d at 623. *Clark* did not address the exclusion of testimony and is inapplicable to this case.

¶ 70    Plaintiff further argues that he was not given sufficient notice to object to the recording of the telephone hearing, that no recording or transcript of the hearing was produced, and that the Board claimed it reviewed a recording of the hearing that did not exist. Plaintiff's claims are contradicted by the record. Three weeks prior to the hearing, the Department sent plaintiff notice of the date and time for his hearing. The notice advised plaintiff to read the publication "Preparing for Your Appeal Hearing" which expressly stated, "The Referee will make a recording of the hearing to preserve a record of the testimony." A written transcript of the recording was produced, was provided to plaintiff at his request prior to his appeal to the Board, and is included in the record.

¶ 71    Plaintiff further argues that the Board never read his written answer, suppressed the fact that his resignation letter was destroyed, and ignored both his text messages documenting abuse and the Department of Labor's wage award. We find plaintiff's assertions are based purely on speculation and are unsupported in the record.

¶ 72    Finally, plaintiff argues that the circuit court denied him due process by failing to review the record, ignoring his "suppressed" resignation letter, refusing to allow Newman to testify, and refusing to acknowledge a sheriff's affidavit verifying plaintiff's attempted service on Caputo's.

¶ 73    As stated above, this court reviews the final decision of the Board rather than that of the circuit court. *Petrovic*, 2016 IL 118562, ¶ 22. The record reveals no due process violation in the circuit court. *Sudzus*, 393 Ill. App. 3d at 825. The circuit court's written order and the bystander's report both state that plaintiff requested that the court allow Newman to testify at the court's hearing and the court declined, correctly noting that it was precluded from doing so by the Administrative Review Law. 735 ILCS 5/3-110 (West 2024). Administrative review by the circuit court, as well as this court, is confined to the evidence that was presented before the Board. 735 ILCS 5/3-110 (West 2024); *Cinkus*, 228 Ill. 2d at 214.

¶ 74    In addition, plaintiff's claims that the court failed to review the record and ignored his "suppressed" resignation letter are directly contradicted by the court's written order. The court's order states that, at the hearing, "[t]he court briefly summarized the record." The order also states that, following arguments, the court stated that "it would review the entirety of the record in light of the parties' arguments" before issuing its decision. The court's order further states that plaintiff pointed out during the hearing "that he had not been provided a copy of his letter of resignation by Caputo's – despite requesting it repeatedly."

¶ 75    The sheriff's affidavit is not contained in the record. Plaintiff attached the affidavit to his appellate brief and as stated above, it is not properly before this court and cannot be used to supplement the record. *Revolution Portfolio*, 341 Ill. App. 3d at 1024. The record shows Caputo's filed its appearance in the circuit court on May 6, 2025, and participated in the hearing. Plaintiff

has not provided any explanation or argument as to how the court's handling of this affidavit denied him due process. Accordingly, his contention is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 76    For these reasons, we affirm the final administrative decision of the Board of Review finding plaintiff ineligible for unemployment insurance benefits.

¶ 77    Affirmed.